# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CT-01045-SCT

*WILLIE BOWIE, INDIVIDUALLY AND ON BEHALF OF
THE HEIRS AT LAW OF LOIS BROWN, DECEASED*

*v.*

*MONTFORT JONES MEMORIAL HOSPITAL;
KOSCIUSKO MEDICAL CLINIC; PERRY LISHMAN,
M.D.; GARY HOLDINESS, M.D.; RICHARD CARTER,
M.D.; AND TIMOTHY ALFORD, M.D.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/2001 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ISAAC K. BYRD |
| | KATRINA M. BIBB GIBBS |
| | RAMEL LEMAR COTTON |
| ATTORNEYS FOR APPELLEES: | STEPHEN P. KRUGER |
| | JOHN COLLINSWORTH McCANTS |
| | HEBER S. SIMMONS, III |
| | TINA LORRAINE NICHOLSON |
| | LYNDA CLOWER CARTER |
| | GEORGE QUINN EVANS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED - 12/31/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     As a result of the death of Lois Brown (Brown), her heirs filed a medical malpractice action against

a hospital, a clinic, and several physicians.  In due course, the trial court granted summary judgment in favor

of the defendants, thus prompting the Brown heirs to appeal to this Court, which assigned this case to the Court of Appeals. The Court of Appeals, on a 6-4 vote, reversed the trial court's grant of summary judgment and remanded the case to the trial court for a plenary trial on the merits. ***Bowie v. Montfort Jones Mem'l Hosp***., 850 So. 2d 1210 (Miss. Ct. App. 2002). We granted the defendants' petition for writ of certiorari, and upon consideration of the record before us and the applicable law, we reverse the Court of Appeals' judgment and affirm the trial court's judgment.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     Lois Brown, age sixty-seven years, was taken by ambulance from her home to Montfort Jones Memorial Hospital in Kosciusko, Mississippi, on June 13, 1998, following a seizure. She had a four-inch laceration to the head. Brown had a history of alcohol-induced seizures and her blood alcohol content that day was .19%. There was evidence that Brown had been consuming both beer and whisky at her home which had no air-conditioning on a day when the heat index had reached 110 degrees Fahrenheit. Brown's condition improved over the next two days but then began to deteriorate. Brown died on June 17, 1998, from a cerebral hemorrhage brought on by heart and lung failure.

¶3.     On November 24, 1999, Willie Bowie (Bowie), individually and as representative of Brown's heirs, filed suit against Montfort Jones Memorial Hospital (Montfort Jones), Kosciusko Medical Clinic (Clinic) and several physicians alleging that Montfort Jones, the Clinic and doctors were negligent in failing to provide Brown with a minimal level of care, thereby causing her death.

¶4.     The trial judge entered an agreed scheduling order on August 16, 2000, which provided, inter alia, that all discovery, was to be completed by March 1, 2001; that the plaintiffs were to designate experts not later than December 31, 2000; and, that the defendants were to designate experts by January 31, 2001.

2

The order further provided that the deadlines could "not be extended by agreement of the parties, but only by permission of the Court upon showing of good cause." Although the plaintiffs failed to designate experts by the December 31, 2000, deadline, Montfort Jones designated its expert witness on January 26, 2001, and the Clinic and the physicians designated their experts on January 31, 2001. Also, on January 26, 2001, Montfort Jones filed a motion for summary judgment and soon thereafter, the physicians and the Clinic likewise filed motions for summary judgment. These various motions for summary judgment alleged basically that without a medical expert, a prima facie case of medical malpractice could not be made. On February 5, 2001, the plaintiffs designated Dr. Obie NcNair as an expert witness. The Miss. R. Civ. P. 26(b)(4) designation included a statement that Dr. McNair would testify the defendants did not properly monitor Brown, did not administer blood gas tests, did not provide daily electrolytes, and gave Brown too much potassium. On February 28, 2001, the plaintiffs filed Dr. McNair's sworn affidavit which stated his opinion "to a reasonable degree of medical probably [sic], that the death of Mrs. Brown could have been avoided if proper monitoring of her heart and blood chemistries had been monitored and attended to more closely."

¶5.     The motions for summary judgment along with motions to strike the plaintiffs' late designation were heard on March 5, 2001, at which time plaintiffs' counsel submitted a motion for extension of time to designate an expert, seeking a retroactive order permitting the late designation. The trial judge found that the motion for extension of time was untimely as it was filed "over two months after the deadline for designation of expert witnesses had passed and over a month after one or more of the Defendants'

3

Motion[s] for Summary Judgment were filed."[1]  The trial judge further noted that the motion claimed the original deadline was not met due to counsel's attendance at other trials or legal proceedings but that counsel offered no evidence such as calendars to support the claim.

¶6.    The trial court then found that because the plaintiffs had not designated an expert in compliance with the agreed scheduling order, no prima facie case of medical malpractice could be made against any of the defendants.  The trial court also found that even if the late-designated expert's affidavit was accepted despite its tardiness, it was inadequate to defeat a motion for summary judgment.

## PROCEEDINGS BEFORE THE COURT OF APPEALS

¶7.    The Court of Appeals reversed the trial court's grant of summary judgment based primarily on our decision rendered in **Thompson v. Patino**, 784 So.2d 220 (Miss. 2001).  As acknowledged by the Court of Appeals, the trial court in today's case did not have the benefit of our decision in **Thompson**, which was handed down sixty-six days after the trial court's grant of summary judgment in today's case. In a 6-4 decision, the Court of Appeals reversed the trial court's grant of summary judgment.  Presiding

---

[1]We quote from the transcript of the trial court's ruling on these issues:

> This Court is of the opinion that anytime anyone has – anytime a plaintiff files a medical malpractice case, they know from that date forward that they're going to have to come forward with expert proof to show that there is – has been some malpractice involved. So the plaintiff knew from November 24th, 1999, until December 31st, 2000, that there was going to have to be experts designated.
>                    **********
> And the Court will note that scheduling orders are necessary....... The rules are enacted for all people to follow and abide by.  And the Court, you know, cannot be lax and allow one to follow the rules and others not to.

Judge Southwick, joined by three judges, dissented and focused on the inadequacy of the affidavit of the plaintiffs' medical expert, without addressing the issue of the trial court's action in striking the affidavit of the expert on the basis of an untimely filing. The Court of Appeals found that the facts in *Thompson* were "remarkably similar" to the facts in today's case. However, as will be discussed later in this opinion, our decision in *Thompson*, which was no doubt "fact-driven," is easily distinguishable from the case sub judice.

## DISCUSSION

¶8. This Court applies a de novo standard of review of a lower court's grant or denial of summary judgment. *Hudson v. Courtesy Motors, Inc.,* 794 So.2d 999, 1002 (Miss. 2001). The proponent of a summary judgment motion bears the burden of showing that there are no genuine issues of material fact such that he is entitled to judgment as a matter of law. *Collier v. Trustmark Nat'l Bank,* 678 So.2d 693, 696 (Miss. 1996). The motion may not be defeated merely by responding with general allegations, but must set forth specific facts showing that issues exist which necessitate a trial. *Drummond v. Buckley*, 627 So.2d 264, 267 (Miss. 1993). After viewing the evidence in a light most favorable to the nonmoving party, this Court will only reverse the decision of the trial court if triable issues of fact exist. *Travis v. Stewart,* 680 So.2d 214, 216 (Miss. 1996).

¶9. While this appeal is before us today to consider the issues of the timeliness of the plaintiffs' designation of a medical expert and the trial court's alternative finding that notwithstanding the timeliness issue, the affidavit of the plaintiffs' designated expert was inadequate to defeat summary judgment, we find

5

the issue of timeliness to be dispositive of this appeal, and thus do not reach the issue of the sufficiency of

the affidavit of the plaintiffs' expert.

> **I. DID THE TRIAL COURT COMMIT ERROR BY FAILING TO CONSIDER THE AFFIDAVIT OF THE PLAINTIFFS' EXPERT DUE TO UNTIMELINESS EN ROUTE TO A GRANT OF SUMMARY JUDGMENT IN FAVOR OF THE MEDICAL DEFENDANTS.**

¶10. Discovery responses are to be supplemented seasonably pursuant to Rule 26(f) of the Mississippi Rules of Civil Procedure. It has been held that "[s]easonably does not mean several months later. It means immediately." *West v. Sanders Clinic for Women, P.A.*, 661 So.2d 714, 721 (Miss. 1995). Additionally, "seasonableness must be determined on a case by case basis looking at the totality of the circumstances surrounding the supplemental information the offering party seeks to admit." *Blanton v. Board of Supervisors*, 720 So.2d 190, 195 (Miss. 1998).

¶11. Lois Brown died in 1998, and this action was filed in 1999. The trial court's scheduling order provided that plaintiffs were to designate experts by December 31, 2000. The motions for summary judgment were filed in January 2001. Plaintiffs did not designate Dr. McNair as a witness until February 5, 2001, and did not file his affidavit until February 28, 2001. Applying the proper standard, the trial court found as follows:

> This Court is of the opinion that the plaintiff has just failed to show any excusable neglect for why the designation of experts was not filed timely. Therefore, the motion for extension of time to designate expert witnesses is denied.

> The motion to strike designation of experts is granted. Because there is [sic] no expert witnesses now before this Court, the motion for summary judgment filed by each of the defendants is granted.

¶12. The plaintiffs rely on ***Thompson v. Patino***, 784 So.2d 220 (Miss. 2001) wherein we held that the striking of an expert designation was considered to be too harsh a sanction for a discovery violation. That decision is clearly limited to the facts of that case and does not stand for the proposition that a trial court may never strike an expert affidavit in response to a discovery violation. ***Id***. at 224. Further, in ***Thompson***, the plaintiffs had designated their expert in 1994 and were seeking to supplement proposed testimony with a deposition which was taken in 1996. The defendants' motion for summary judgment in that case was not filed until 1997. Although the plaintiffs' expert affidavit was not filed until after the motion for summary judgment was filed, the expert in that case had been timely designated and his deposition had been taken.

¶13. In the present case, the expert was not timely designated. Also, the holding in ***Thompson*** dealt with the propriety of a particular sanction for the violation of a discovery rule whereas the instant case involves the failure to comply with a trial court's order concerning the time frame for the completion of discovery. Neither Dr. McNair's identity nor his affidavit were made available until after the motion for summary judgment had been filed, notwithstanding the defendants' previously submitted Rule 26(b)(4) interrogatory [Miss. R. Civ. P. 26(b)(4)] and the trial court's previously entered agreed scheduling order. The trial judge made a specific finding that the plaintiffs had failed to show *any* excusable neglect as to why the designation of the expert was not timely filed. This Court has previously held that an action may not be dismissed for a discovery violation if a party is simply unable to comply, but that dismissal may be justified if the violation is the result of "willfulness, bad faith, *or any fault of the party*." ***Fluor Corp. v. Cook***, 551 So.2d 897, 973 (Miss. 1989) (emphasis added).

7

¶14.    Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases.  Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril.  *See, e.g.,* ***Kilpatrick v. Miss. Baptist Med. Ctr.***, 461 So.2d 765, 767-68 (Miss. 1984) (held that trial court did not abuse discretion in dismissing case due to failure to comply with pre-rules discovery statutes relating to timely designation of expert witnesses);***Mallet v. Carter***, 803 So.2d 504,  507-08 (Miss. Ct. App. 2002) (held that trial court did not abuse discretion in dismissing case  for failure to timely designate expert witness within the time allowed by the trial court's scheduling order).  The provisions of Miss. R. Civ. P. 37(d)(2) clearly provide that the sanctions for failure to answer Rule 33 interrogatories [Miss. R. Civ. P. 33] are the same as set out in subsections (A), (B), and (C) of Miss. R. Civ. P. 37(b)(2), which provide, inter alia, for sanctions by way of dismissal of a case.  In a case wherein we upheld the trial court's refusal to set aside a default judgment, we stated:

> It may be that people will miss fewer trains if they know the engineer will leave without them rather than delay even a few seconds.  Although we are not about to inaugurate a policy of entering irrevocable defaults where no answer has been filed by the thirty-first day, we are equally resolved that people know that the duty to answer must be taken seriously.  At some point the train must leave.

***Guaranty Nat'l Ins. Co. v. Pittman,*** 501 So.2d 377, 388-89 (Miss. 1987).

¶15.    The sound reasoning in ***Guaranty National*** is certainly applicable in the case before us today. As of August 16, 2000, the parties and attorneys knew what was expected of them by the trial court upon

its entry of the scheduling order. The parties and the attorneys knew from the express language of the scheduling order that the therein stated deadlines could "not be extended by agreement of the parties, but only by permission of the Court upon showing of good cause." Pursuant to the provisions of the scheduling order, the plaintiffs were to designate their expert by December 31, 2000, which came and passed uneventfully without any expert designation by the plaintiffs. Notwithstanding the plaintiffs' failure to timely designate their experts, the defendants dutifully designated their experts in a timely fashion – but the plaintiffs still were not to be heard from by way of their expert designation. It was not until the defendants filed their various motions for summary judgment that the plaintiffs finally designated their medical expert. Additionally, it was not until the hearing on the motions for summary judgment, some sixty-four days after the passage of the plaintiffs' deadline for expert designation, that the plaintiffs for the first time acknowledged that they had failed to meet the court-imposed deadline. This is when the plaintiffs submitted to the trial court a motion for extension of time to designate an expert and also seeking a retroactive order permitting the late expert designation. The trial judge found that the plaintiffs' motion for extension of time was untimely inasmuch as it had been filed "over two months after the deadline for designation of expert witnesses had passed and over a month after one or more of the Defendants' Motion[s] for Summary Judgment were filed." Upon the trial court's finding that the plaintiffs had not timely designated an expert in accordance with the provisions of the scheduling order, the trial court then granted summary judgment since the plaintiffs could not make out a prima facie case of medical malpractice without a medical expert.

¶16.    While the end result in today's case may appear to be harsh, litigants must understand that there is an obligation to timely comply with the orders of our trial courts. As we noted in *Guaranty National*,

9

the parties must take seriously their duty to comply with court orders. "At some point the train must leave." 501 So.2d at 389. That point was reached in today's case on December 31, 2000.

## CONCLUSION

¶17. For the reasons stated, the decision of the Court of Appeals is reversed, and the trial court's summary judgment in favor of the defendants is affirmed.

¶18. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER AND COBB, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶19. As we found in *Thompson v. Patino*, 784 So.2d 220 (Miss. 2001), absolute and final summary judgment dismissal is too draconian a penalty for a discovery violation such as the one presented here. As the Court of Appeals found, summary judgment is too excessive a sanction for this discovery violation and genuine issues of material fact exist regarding the standard of care and alleged breach which precludes summary judgment. *Bowie v. Montfort Jones Mem'l Hosp.*, 850 So.2d 1210 (Miss. Ct. App. 2002). The decision of the Court of Appeals should be affirmed. The facts of the present case were summarized by the Court of Appeals as follows:

> On June 13, 1998, Lois Brown, sixty-seven years of age, was brought to Montfort Jones Memorial Hospital by ambulance suffering the aftereffects of a seizure. It was noted at admittance that Mrs. Brown had a history of alcohol- induced seizures and that her blood alcohol content was .19%. Mrs. Brown had a four-inch laceration on her scalp that had been stapled closed. Mrs. Brown had apparently been consuming both beer and whisky at her home which had no air-

10

conditioning on a day when the heat index in Kosciusko reached 110 degrees Fahrenheit. After a CT scan, it was also noted that Mrs. Brown had a "bur hole" in her left temple which had resulted from a past craniotomy.

Mrs. Brown's condition showed improvement over the next two days. However on June 16th, Mrs. Brown's condition began to deteriorate. Throughout the evening of the sixteenth and the early morning hours of the seventeenth, Mrs. Brown became increasingly unresponsive. Mrs. Brown died on June 17, 1998. The cause of death was determined to be a cerebral hemorrhage which caused both heart and lung failure.

On November 24, 1999, Willie Bowie, individually and as representative of Mrs. Brown's heirs, filed suit against Montfort Jones Memorial Hospital, Kosciusko Medical Clinic, several physicians, and an unidentified nurse or nurses. The suit alleged that Montfort Jones, the medical clinic, doctors, and nurses were negligent in failing to provide Mrs. Brown with a "nationally recognized minimal" level of care, which caused her death. The defendants' answer denied any negligence.

On August 16, 2000, an agreed scheduling order was entered by the trial judge. All discovery, including depositions, was to be completed by March 1, 2001. The plaintiffs were to designate an expert no later than December 31, 2000, and the defendants were to designate experts by January 31, 2001. The order provided that the designation of expert witnesses should include all information required to be disclosed under Mississippi Rule of Civil Procedure 26(b)(4)(A). The order stated the deadlines could "not be extended by agreement of the parties, but only by permission of the Court upon showing of good cause."

No plaintiff's expert was designated by the December 31, 2000 deadline. Montfort Jones designated an expert witness on January 26, 2001. It also adopted as an expert any expert designated by the other defendants. The medical clinic and the physicians designated experts on January 31, 2001.

On the same day it designated an expert, Montfort Jones also filed a motion for summary judgment. The physicians filed a similar motion for summary judgment with their designation of experts. They contended that the alleged negligence in this matter was not of the type "within the practical knowledge and experience of lay persons," and would require expert testimony. Without an expert, the defendants argued that a prima facie case of medical malpractice could not be made. The medical clinic later filed its own summary judgment motion.

On February 5, 2002, the plaintiffs designated Dr. Obie McNair as an expert witness. The designation stated that Dr. McNair would testify that the defendants did not properly monitor Mrs. Brown, did not administer blood gas tests, did not provide daily electrolytes, and gave Mrs. Brown too much potassium. Dr. McNair would testify that the high level of potassium caused Mrs. Brown's "cardiac malfunctioning." On February 28, 2001, the plaintiffs filed an affidavit from Dr. McNair. The affidavit stated that it was Dr. McNair's opinion "to a reasonable

degree of medical [probability], that the death of Mrs. Brown could have been avoided if proper monitoring of her heart and blood chemistries had been ... attended to more closely."

Motions for summary judgment along with motions to strike the plaintiff's late designation were heard on March 5, 2001. At the hearing, plaintiffs' counsel submitted a motion for extension of time to designate an expert, seeking a retroactive order permitting the late designation. The circuit judge found the motion for extension of time untimely as it was filed "over two months after the deadline for designation of expert witnesses had passed and over a month after one or more of the Defendants' Motion for Summary Judgment were filed." The circuit judge noted that the motion claimed the original deadline was not met due to counsel's attendance at other trials or legal proceedings but that counsel offered no evidence such as calendars to support the claim.

The court found that because the plaintiffs had not designated an expert in compliance with the agreed scheduling order that no prima facie case of medical malpractice could be made against any of the defendants.

The court also found that even if the late-designated expert's affidavit was accepted despite its tardiness, it was inadequate to defeat a motion for summary judgment.

850 So. 2d at 1211-12.

¶20.     The facts in ***Thompson*** are very similar.   As summarized by the Court of Appeals,

the facts are as follows:

> On February 9, 1993, Karin King Thompson underwent neurological surgery at St. Dominic-Jackson Memorial Hospital in Jackson, Mississippi. The surgery was performed by John P. Gorecki, M.D., with Carlos S. Patino, M.D., serving as anesthesiologist. Following surgery, Thompson's tongue became severely swollen. As a result, she began experiencing breathing difficulty and went into cardiac arrest. Medical personnel performed an emergency tracheostomy. On February 16, 1994, Thompson filed this suit for damages in the Circuit Court of the First Judicial District of Hinds County, Mississippi, alleging medical malpractice and naming Dr. Patino, St. Dominic, and ten unnamed individuals as defendants.
> On March 11, 1994, St. Dominic served Thompson with interrogatories and requests for production of documents. On March 15, 1994, Dr. Patino did likewise. One of Dr. Patino's interrogatories requested that Thompson name the experts whom she intended to call at trial and the substance of the facts and opinions about which the experts were expected to testify.

12

After Thompson failed to respond to the discovery requests, on May 16, 1994, and June 8, 1994, St. Dominic and Dr. Patino filed motions to compel. On June 17, 1994, the circuit court ordered Thompson to respond to the discovery within 7 days.

On June 24, 1994, Thompson served St. Dominic and Dr. Patino with her responses to their interrogatories. Therein she named Bernard Patrick, M.D., and William Cause, M.D., as expert witnesses but she failed to state what their opinions would be.

On July 14, 1994, Thompson filed a motion for extension of time to conduct discovery. On February 10, 1995, Thompson amended her complaint to add Dr. Gorecki as a defendant. By agreed order dated September 25, 1995, the circuit court extended discovery for 90 days.

In September, 1996, Thompson deposed Dr. Gorecki.

On October 18, 1996, Thompson requested an additional 60 days of discovery. The trial court denied this request by order dated December 23, 1996.

In November, 1996, Thompson's counsel's office was destroyed by fire, and her file had to be reconstructed.

On February 5, 1997, Dr. Patino filed a motion to dismiss, or, alternatively, for summary judgment. Prior to the filing of Dr. Patino's motion, Thompson had not supplemented her responses to interrogatories.

On February 10, 1997, Thompson supplemented her responses to interrogatories to St. Dominic and Dr. Patino, and named for the first time William Wilson, M.D., as an expert in neurosurgery, and Herbert Ferrari, M.D., as an expert in anesthesiology.

On February 14, 1997, Dr. Patino filed a motion to strike Thompson's supplemental responses.

On February 18, 1997, Thompson filed her response to Dr. Patino's motion for summary judgment. On February 21, 1997, Thompson filed Dr. Ferrari's affidavit wherein he averred that Dr. Patino breached the duty of care owed to Thompson. In response to Dr. Patino's motion to strike her supplemental responses, Thompson argued that she had learned additional information during Dr. Gorecki's deposition that caused the delay in naming Dr. Wilson and Dr. Ferrari as expert witnesses. On March 24, 1997, the circuit court granted the motion to strike, finding that Thompson has sued Dr. Patino in 1994 and could have proceeded against Dr. Patino no matter what Dr. Gorecki said in his deposition. Therefore, awaiting Dr. Gorecki's deposition was not a legitimate excuse for failure to name her experts as to Dr. Patino. The circuit court found that the supplemental responses were tardy and should be stricken.

On March 31, 1997, Dr. Patino moved to strike Dr. Ferrari's affidavit. Dr. Patino argued that, because the discovery responses naming Dr. Ferrari as an expert witness had been stricken, Dr. Ferrari could not testify at trial and he could not

submit an affidavit opposing summary judgment. By order dated July 10, 1997, the circuit court struck Dr. Ferrari's affidavit and granted summary judgment for Dr. Patino.

On August 5, 1997, the trial court granted summary judgment as to Dr. Gorecki. On August 13, 1997, the trial court granted summary judgment as to St. Dominic. On appeal, noting that Thompson had filed suit in February, 1994, was given until December, 1995, to complete discovery, and filed the discovery responses pertaining to her expert witnesses in February, 1997, the Court of Appeals found that the circuit court had not abused its discretion in striking the discovery responses and expert affidavit. *Thompson v. Patino*, No. 97-CA-00971-COA (Miss.Ct.App. May 18, 1999). Furthermore, because Thompson had no expert witnesses or affidavits in support of her claims, the Court of Appeals found that the circuit court did not err in granting summary judgment in favor of the defendants.

850 So. 2d at 1213-14 (quoting *Thompson*, 784 So.2d at 221-22). Despite the facts in *Thompson*, we held that summary judgment dismissal was too excessive a sanction; a less severe sanction for the discovery violations was appropriate; and the motion for summary judgment should not have been considered until all responses and affidavits were submitted and reviewed. *Thompson*, 784 So.2d at 226. We further held that the circuit court's exclusion of the medical expert evidence which prompted the summary judgment dismissal was an abuse of discretion. *Id.* at 224.

¶21.	In *Thompson*, plaintiffs' counsel was seventy-five days late in filing her incomplete answers to interrogatories with regard to the designation of a expert witness. *Id.* at 221. Even after a motion to compel was granted by the trial court, it still took plaintiffs' counsel sixty-nine days to submit her incomplete responses. *Id.* Furthermore, counsel had nineteen months of discovery time in which to complete the designated expert affidavit and supplement the answers to her incomplete interrogatories. *Id.* at 221-22. Despite all of these facts, we found summary judgment dismissal to be inappropriate and sanctions to be the proper remedy for such disregard for the discovery rules. *Id.* at 224.

14

¶22. Unlike *Thompson*, counsel for Bowie was only thirty-six days late in designating an expert and only fifty-nine days late in submitting the expert's affidavit. *Bowie*, 850 So.2d at 1211-12. Under the present facts, the scheduling order only gave Bowie essentially three and one-half months to designate an expert and submit an affidavit. Whereas under *Thompson*, the plaintiffs had nineteen months of discovery time in which to complete the designated expert affidavit and supplement the answers to her incomplete interrogatory responses. *Thompson*, 784 So.2d at 221-22. Furthermore, with respect to Bowie, no motion to compel was granted.

¶23. Looking at the similarity of the two cases and the level of negligence of each attorney, one can clearly see that Bowie's counsel was negligent, but not as severely negligent in disregarding applicable discovery rules. Clearly, sanctions would have been appropriate; but just as we found in *Thompson*, absolute and final summary judgment dismissal under these circumstances is too draconian a penalty for a discovery violation. *Id.* at 223-24.

¶24. Some recognition must also be given to the fact that the Uniform Circuit and County Court Rules call for completion of discovery within ninety days after service of an answer by the defendant absent a different time limit imposed by the Court U.C.C.C.R. 4.04(A). However, the clear thrust of the rule centered around designation of an expert anticipates situations where one party attempts to designate an expert close to the trial date. To this end, the rule states that "[a]bsent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial." U.C.C.C.R. 4.04(A). Here, we are not dealing with the situation anticipated by this rule. We are dealing with circumstances and facts illustrating that Bowie

15

was not trying underhandedly to sneak in an expert witness right before trial; but rather was only negligent in failing to designate such expert and file the appropriate affidavit within the time specified by a scheduling order. No trial date was imminent, and there was no prejudice caused to the defendants. The Court in *Thompson*, recognized the purpose of this rule in its holding and found that the record showed that no trial date was imminent. 784 So.2d at 224. This logic is also applicable under the present circumstances.

¶25.    Under the circumstances, sanctions are the more appropriate remedy. In this regard, the trial judge has ample authority and discretion to impose the appropriate punishment for counsel's disregard for the scheduling order. Sanctions are available not only under the Uniform Circuit and County Court Rules, but also under applicable Rules of Civil Procedure. Under Rule 1.03 of the Uniform Circuit and County Court Rules, the trial judge may issue "sanctions, [implement] contempt proceedings or other disciplinary actions" as decided by the court. U.C.C.C.R. 1.03. Furthermore, under Rule 37 of the Rules of Civil Procedure, the court may tax the costs and attorneys fees of a Motion to Compel; impose sanctions; strike pleadings; refuse to allow a party to support or oppose designated claims; initiate contempt proceedings; and issue any other sanctions appropriate under the circumstances. M.R.C.P. 37(a)(4), (b)(1)(2), & (e). While summary judgment is excessive and inappropriate under the circumstances, the trial court has an abundance of other remedial devices at its disposal.

¶26.    Additionally, the trial court found summary judgment dismissal proper; it also went through the motions and found the expert witnesses affidavit insufficient as to support the allegation of medical malpractice, since specifically the "affidavit is woefully lacking in that it fails to allege duty, breach of duty and causation as to each the defendants." A look at the language in the affidavit reveals that, although duty, breach, and causation are not specifically mentioned, the affidavit does properly address the standard of

16

care, the alleged insufficient standard of care provided by the physician, and the end result of such insufficient standard of care. Just because Dr. McNair, as an expert medical witness, did not use the specific words duty, breach, and causation, does not mean his affidavit is insufficient for failing to allege and support such factors with evidence. Only attorneys are familiar with such wording. A physician in the execution of an affidavit should not be expected to reference such legal terms. All that is required is that the affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." M.R.C.P. 56(e). Rule 56 does not contain a requirement that affidavits submitted must specifically reference the factors and/or elements to prove the case in order to classify as probative evidence in support of a denial of the motion.

¶27. The majority errs in relying on pre-Rules of Civil Procedure authority, see *Kilpatrick v. Mississippi Baptist Medical Center*, 461 So.2d 767-68 (Miss. 1984). The Rules of Civil Procedure are based on discovery to define and refine the issues. Upon discovery different types of experts may be needed. The plaintiffs' attorney did come up with an expert in time to avoid a summary judgment. If the majority wants to sanction the attorney so be it, but should not deny the plaintiffs their day in court. Bowie alleges facts and submits the affidavit of Dr. McNair in support of the theory of medical malpractice. The defendants, of course, deny medical malpractice was committed. As the record shows the defendants swear to one version of events and the plaintiffs swear to an entirely different version of said events, which is sufficient to require denial of a motion for summary judgment. *Newell v. Hinton*, 556 So.2d 1037,

17

1041 (Miss. 1990) (citing ***Dennis v. Searle***, 457 So.2d 941, 944 (Miss. 1984)).[2]  Both were able to

present probative evidence to support their claims and versions of events.  With disputed material facts

present, summary judgment was not appropriate.

¶28.    The Court of Appeals' decision should be affirmed as our holding in ***Thompson***, 784 So.2d 220,

is directly on point and determinative of the issues presented.  For these reasons, I dissent.

**EASLEY, J., JOINS THIS OPINION.**

---

[2]*See also* ***Allison v. State Farm Fire & Cas.Co.***, 543 So.2d 661, 623 (Miss. 1989); ***Clark v. Moore Mem'l United Methodist Church***, 538 So.2d 760, 762 (Miss. 1989); ***Short v. Columbus Rubber & Gasket Co.***, 535 So.2d 61, 63 (Miss. 1988); ***Brown v. Credit Ctr., Inc.***, 444 So.2d 358 (Miss. 1983).