992 So.2d 1202 (2008)
Isaac K. BYRD, Jr., Katrina M. Gibbs and Byrd, Gibbs & Martin f/k/a Byrd & Associates, PLLC, Appellants,
v.
Willie BOWIE, Individually, and Charles Brown, Individually, Being the Sole Wrongful Death Beneficiaries of Lois Brown, Deceased, Appellees.
No. 2006-CA-01999-COA.
Court of Appeals of Mississippi.
June 17, 2008.
Rehearing Denied October 21, 2008.
*1203 Suzanne Keys, Jackson, attorney for appellants.
Eddie Jacob Abdeen, attorney for appellees.
EN BANC.
MYERS, J., for the Court.
¶ 1. The case before this Court today is the third installment of the appellate trilogy concerning the dismissal with prejudice of a medical malpractice/wrongful death case filed by Byrd & Associates, PLLC, on behalf of Willie Bowie and Charles Brown (collectively, Bowie, although sometimes separately referred to as Bowie and/or Brown) following the death of their mother, Lois Brown. The supreme court upheld the grant of summary judgment after Byrd & Associates failed to timely designate a medical expert, which ultimately caused the demise of the underlying medical malpractice case. Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1039(¶ 1) (Miss.2003).
¶ 2. Following the supreme court's affirmance of the dismissal of the medical malpractice case, a legal malpractice case ensued against Isaac K. Byrd, Jr., Katrina M. Gibbs, and Byrd, Gibbs & Martin f/k/a Byrd & Associates, PLLC (collectively, Byrd). In a seemingly consistent pattern, Byrd failed to timely answer requests for admission in the legal malpractice case against the firm and the individual members of the firm, Byrd and Gibbs. Two requests for admission propounded by Bowie and Brown stated, "The damages of the Brown Parties in the Brown Death Action were $2,000,000.00," and "The negligence *1204 of Byrd and Gibbs in the Brown Death Action resulted in the Brown parties sustaining damages in the amount of $2,000,000.00." As a result of Byrd's failure to timely answer, these two statements were deemed admitted by Byrd.[1]See M.R.C.P. 36(b). Byrd sought to withdraw his admissions; however, the trial court denied his motion to withdraw the admissions. Having resolved all issues of legal negligence and the amount of damages through the resulting admissions, the trial court then found that there were no genuine issues of material fact left to be discerned by a jury. At this juncture, the second supreme court visit for this case occurred by interlocutory appeal wherein the supreme court affirmed the trial court's denial of Byrd's motion to withdraw the deemed admitted requests for admission and the grant of summary judgment. Byrd v. Bowie, 933 So.2d 899, 901, 907 (¶¶ 1, 29) (Miss.2006).
¶ 3. The trial court then entered final summary judgment in favor of Bowie and Brown. Byrd, Gibbs, and Byrd & Associates were held to be jointly and severally liable for actual damages in the amount of $2,000,000. It is from this final judgment and damage award that this current appeal arises. Byrd asserts the following errors, which we list verbatim:
I. The Circuit Court of Rankin County erred in granting summary judgment to Bowie:
A. The trial court erred in concluding that [the Mississippi Supreme] Court's holding in Byrd v. Bowie, 933 So.2d 899 (Miss.2006) established all elements of the legal negligence claim against the Byrd [d]efendants.
B. The deemed admissions as to damages are insufficient to establish that summary judgment as to damages is appropriate.
Since both subparts of the issue, as framed by Byrd, concern the propriety of the grant of summary judgment, we discuss them together as a part of the overarching issue: whether summary judgment was properly granted by the trial judge.
¶ 4. Finding that the trial court did not err in granting summary judgment in favor of Bowie and Brown, we affirm the judgment and award of actual damages in the amount of $2,000,000.

STANDARD OF REVIEW
¶ 5. Our supreme court has consistently held that review of a grant of summary judgment is de novo. Hurdle v. Holloway, 848 So.2d 183, 185(¶ 4) (Miss. 2003); Miller v. Meeks, 762 So.2d 302, 304(¶ 3) (Miss.2000); Crain v. Cleveland Lodge, 1532, Order of Moose, Inc., 641 So.2d 1186, 1188 (Miss.1994). A summary judgment motion is only properly granted when no genuine issue of material fact exists. Miller, 762 So.2d at 304(¶ 3); M.R.C.P. 56(c). The moving party has the burden of demonstrating that no genuine issue of material fact exists within the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[.]" Id. (emphasis added); see also Davis v. Hoss, 869 So.2d 397, 401(¶ 10) (Miss.2004); Anglado v. Leaf River Forest Prods., Inc., 716 So.2d 543, 547(¶ 13) (Miss.1998).

DISCUSSION
¶ 6. The Court has stated that:

*1205 [t]o recover for legal malpractice, the plaintiff must prove by a preponderance of evidence the following: (1) Existence of a lawyer-client relationship; (2) Negligence on the part of the lawyer in handling his client's affairs entrusted to him; and (3) Proximate cause of the injury. As to the third factor, proximate cause, the plaintiff must show that, but for his attorney's negligence, he would have been successful in the prosecution or defense of the underlying action.
Lancaster v. Stevens, 961 So.2d 768, 771(¶ 8) (Miss.Ct.App.2007) (internal citations and internal quotations omitted). None of the parties to this action dispute that the first two elements are easily established in this case. The dispute lies in whether the third element, or proximate cause of the legal injury, was duly established by the deemed admitted requests for admission. Our review turns now to whether Byrd's deemed admitted requests for admission aid to establish all elements of the legal malpractice case against Byrd.
¶ 7. In order to recover against Byrd for legal malpractice and meet the third element of proximate cause, the Bowie plaintiffs are required to show that, but for Byrd's negligence, the Bowie plaintiffs would have been successful in the prosecution of the underlying medical malpractice case. Id. The case before us today was proven through Byrd's admittance that his legal error was the proximate cause of Bowie's damages, albeit the admittance of such proximate cause occurred via the operation of Mississippi Rule of Civil Procedure 36 deeming such facts admitted. The element of proximate cause was established by Byrd's failure to answer or deny the requests for admission.
¶ 8. Mississippi Rule of Civil Procedure 36(a) is clear and unambiguous in stating that requests for admission propounded, which remain unanswered, are deemed admitted. Rule 36(b) states that "[a]ny matter admitted under this rule is conclusively established, unless the court on motion permits withdrawal or amendment of the admission." M.R.C.P. 36(b) (emphasis added). Any matter conclusively established is treated as a judicial admission, and thus, both the court and the parties are bound by the admissions. It is through this operation that a court may base a grant of summary judgment upon an admission, if the court is satisfied that there are no outstanding genuine issues of material fact in the case. See M.R.C.P. 56(c).
¶ 9. Our supreme court has affirmed a trial court's grant of summary judgment and accompanying award of damages based upon admissions deemed admitted pursuant to Mississippi Rule of Civil Procedure 36 in an action concerning a breach of a construction contract. Sawyer v. Hannan, 556 So.2d 696 (Miss.1990). In Sawyer, the homeowners brought suit against their contractor and propounded requests for admission. Id. at 696. Part of the requests for admission requested the contractor to admit that as a result of his acts and/or omissions, the homeowners incurred those damages set forth in the ad damnum section of their complaint. Id. at 698. The contractor untimely answered the requests for admission propounded to him, and summary judgment in the amount of $80,000 was granted in favor of the homeowners. Id. at 696. The contractor was found to have admitted the requests for admission based upon the operation of Mississippi Rule of Civil Procedure 36; however, he sought to withdraw the deemed admissions. The trial court denied the contractor's request to have his deemed admitted responses withdrawn, and the contractor appealed. Upon review, the supreme court found that the trial court's denial of the contractor's motion to withdraw his admissions and file an *1206 answer to the requests for admission was not an abuse of discretion. Id. at 698. Therefore, the grant of summary judgment based upon the admissions and the award of damages based on the damages set forth in the ad damnum section of the complaint was upheld by the supreme court. Id.
¶ 10. We can find no reason why the application of Mississippi Rule of Civil Procedure 36 should be interpreted any differently here than it was interpreted by the supreme court in Sawyer. The requests for admission propounded to Byrd asked for an admittance that Byrd's conduct was the proximate cause of Bowie's legal injury, and that such injury damaged Bowie in the amount of $2,000,000. Byrd's failure to deny or answer such requests for admission resulted in the matters being admitted by operation of Mississippi Rule of Civil Procedure 36. While we recognize that in Sawyer damages were awarded in the context of a construction contract case and not in the context of a legal malpractice case, the supreme court did not limit its holding in Sawyer to any particular type of case or matter. Much the same, the supreme court has yet to limit Mississippi Rule of Civil Procedure 36 to only "certain" matters; rather, the plain language of Rule 36 states that it is applicable to "any matter." Rule 36 does not differentiate between admissions of one element of proof from another element of proof. Further, the language of Rule 36 does not differentiate certain matters that will be held to be admitted upon failure to answer or deny the requests for admission. Rather, the rule simply states that "[a]ny matter admitted under this rule is conclusively established"; therefore, the admission can be used as a basis for granting summary judgment. M.R.C.P. 36 (emphasis added).
¶ 11. It would be superfluous for a court to take an admitted fact or matter as conclusively established and also require a party to establish the fact or matter for evidentiary purposes. Any other application of Mississippi Rule of Civil Procedure 36 except for its strict construction would undermine Rule 36, making the rule irrelevant. Because Byrd failed to timely answer the requests for admission or object to the requests for admission as provided under Rule 36(a), the matters set forth are automatically deemed admitted. Thus, Bowie met his required element of proof of proximate cause in the legal malpractice case. The admissions served to establish such proximate cause. Rule 36 is self-executing, and in this case, we find each element of legal malpractice to be fulfilled so as to justify a grant of summary judgment.
¶ 12. Aside from the forgoing discussion, we also find that several of Byrd's own representations to third parties during the course of this litigation, as well as in other proceedings, setting the amount of damages to be $2,000,000 lend even more credence to the validity of this figure for damages. While the dissent characterizes the damages as "unliquidated" and therefore unascertainable at this point, we find it necessary to note that upon Byrd's notice of the legal malpractice suit against him, Byrd, himself, notified his malpractice insurance carrier of the pending malpractice suit and listed the amount of damages at $2,000,000. Such a representation can only lend to the argument that Byrd valued the claim against him at this amount. Furthermore, we must note that in an unrelated, but unfortunate turn of events, Byrd's insurer filed for bankruptcy subsequent to Byrd giving notice of the pending claim against him. A sworn proof of claim was filed by Byrd in the malpractice insurer's insolvency proceedings for $2,000,000. Such a representation made by Byrd was subject to the pleading rules of Federal Rule of Civil Procedure 11 and also subject *1207 to 18 U.S.C. §§ 152, 3571(Rev.2006), which provide the penalties for presenting a fraudulent claim. Based on the forgoing facts, coupled with Byrd's deemed admission that the actual damages suffered by Bowie are valued at $2,000,000, we find that the trial court did not err in granting summary judgment in favor of Bowie and awarding damages in the amount of $2,000,000.

CONCLUSION
¶ 13. It has long been established that under Mississippi Rule of Civil Procedure 36, if the party who has been served with a request for admission does not serve a timely response, the requested matter is deemed admitted and for all intensive purposes, conclusively established. Here, all elements of the legal malpractice claim against Byrd, including the proximate cause and actual damages sustained as a result of the legal malpractice, were conclusively established through the requests for admission that were deemed admitted as a result of Byrd's failure to timely answer the requests. Therefore, we affirm the trial court's grant of summary judgment and award of damages in the amount of $2,000,000 in favor of Bowie.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J. AND CHANDLER, J. KING, C.J., NOT PARTICIPATING.
IRVING, J., Dissenting.
¶ 15. In my judgment, the majority errs in concluding that Byrd's[2] default admissions, regarding the extent of Bowie's damages, vitiates Bowie's obligation to prove Bowie's medical malpractice case within the legal malpractice case that Bowie instituted against Byrd. Therefore, I respectfully dissent. I would reverse and remand this case for a trial on the merits, because, for the reasons that I will proceed to explain, the grant of summary judgment was inappropriate.
¶ 16. In affirming the trial court, the majority relies upon Sawyer v. Hannan, 556 So.2d 696 (Miss.1990). In my view, this reliance is misplaced. There is nothing in Sawyer that assists us in resolving the issue presented. Sawyer is not a legal malpractice case, and there is nothing in Sawyer indicating that the judgment rendered there is predicated upon a party's default admission of unliquidated damages. Sawyer stands for the simple proposition that, in a proper case, default admissions under Rule 36 of the Mississippi Rules of Civil Procedures may, without further proof, be sufficient for entrance the of a money judgment against the defaulting party. Here, before we can resolve the ultimate issue of whether summary judgment was properly granted, we must address two sub-issues. First, we must decide whether, in this legal malpractice case, a general admission of damages, which admittedly includes unliquidated damages, may be accepted as Bowie's *1208 measure of damages without actual proof of damages. Second, we must decide whether a judgment for the amount of damages deemed admitted was lawfully rendered against Byrd even though Bowie had not proved liability against the medical defendants in the underlying medical malpractice case which he mishandled.
¶ 17. This action arises out of the dismissal with prejudice of a medical malpractice action filed by Byrd on behalf of Willie and Charles following the death of their mother, Lois Brown.[3] In the medical malpractice action, Bowie sued Montfort Jones Hospital, Kosicusko Medical Clinic, and several physicians, alleging that the defendants were negligent in failing to provide Lois with the minimal level of care after she reported to Montfort Jones following a seizure, thereby causing her death. Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1039 (¶¶ 2-3) (Miss. 2003). After Byrd failed to timely designate a medical expert, the trial court granted summary judgment for the Montfort Jones defendants. On appeal, the Mississippi Supreme Court affirmed. Id. at 1039(¶ 1).
¶ 18. Following the affirmance by the supreme court of the trial court's judgment in Montfort Jones, Bowie filed a legal malpractice action against Byrd. At the time of service of the complaint in the legal malpractice action, Bowie also served requests for admission upon Byrd. Byrd failed to answer the requests within thirty days as required by Rule 36(a) of the Mississippi Rules of Civil Procedure. The requests asked Byrd to admit, inter alia, that "[Bowie's] damages in the [Montfort Jones] death [a]ction were $2,000,000; and the negligence of Byrd and Gibbs in the [Montfort Jones] action resulted in [Bowie] sustaining damages in the amount of $2,000,000."[4] After Byrd failed to respond to the requests for admission, Bowie filed a motion for partial summary judgment, which was granted as to the issue of negligence. The judge's order granting partial summary judgment as to Byrd's negligence was reviewed by the Mississippi Supreme Court via an interlocutory appeal. The supreme court affirmed. Byrd v. Bowie, 933 So.2d 899, 907(¶ 29) (Miss. 2006) (Byrd I). Following the supreme court's affirmance on the negligence issue, Bowie filed a motion for summary judgment with the trial court, arguing that the Bowie "[p]laintiffs have established their claim of negligence against the Byrd defendants in this case in its entirety, including actual damages proximately caused thereby, in the amount of $2,000,000." (Emphasis added). The trial court agreed and entered a final judgment against Byrd for two million dollars.
¶ 19. To recover in a legal malpractice claim, the plaintiff must prove by a preponderance of the evidence: (1) the "[e]xistence of a lawyer-client relationship[,] (2) [n]egligence on the part of the lawyer in handling [the matter] entrusted to him[, and] (3) [p]roximate cause of injury." Hickox v. Holleman, 502 So.2d 626, 633 (Miss.1987).
¶ 20. There is no dispute that a lawyer-client relationship existed between Bowie and Byrd. Further, there is no dispute that Byrd's negligence in failing to timely designate a medical expert was the reason Bowie lost an opportunity to try and prove that the medical defendants in Montfort *1209 Jones violated the standard of care owed to Lois and that that deviation was the proximate cause of her untimely death. The problem here is with the third element: proximate cause of injury. I now turn my focus to this element.
¶ 21. Bowie contends that the rulings in Byrd I and in Montfort Jones undergird the trial court's grant of summary judgment against Byrd in the amount of two million dollars. Stated another way, the Bowie plaintiffs argue that the rulings in Byrd I and Montfort Jones constitute the law of the case and that these rulings eliminate any genuine issue of material fact with respect to the third issue in this legal malpractice case, entitling them to the two million dollar judgment rendered by the trial court.
¶ 22. In the interlocutory appeal in Byrd I, the Mississippi Supreme Court was presented with three issues:
(1) whether the trial court erred by granting partial summary judgment on the issue of negligence and by denying the motion to withdraw default responses to request for admissions, (2) whether the trial court erred by denying the motion to stay, and (3) whether the trial court erred by denying [a] motion to disqualify [Eddie J.] Abdeen [Bowie's attorney in Byrd I].
Byrd, 933 So.2d at 901(¶ 4). It is the supreme court's holding with respect to the first issue that is pertinent to our inquiry. In resolving this issue, the supreme court found that the trial judge did not abuse his discretion in refusing to allow Byrd to withdraw the default responses and that Byrd's failure to timely designate an expert in Montfort Jones constituted negligence as a matter of law. Id. at 904-05 (¶¶ 14-18). Unfortunately, in discussing this issue, the court inadvertently used language that perhaps caused Bowie, as well as the trial judge and the majority, to erroneously believe that the court was holding that Byrd was liable to Bowie for damages, even though there had been no proof that Bowie would have recovered against the medical defendants but for Byrd's negligence. No doubt the confusion arose due to the language used by the Byrd court in discussing whether expert testimony was required to prove that Byrd was negligent in failing to timely designate a medical expert. This is what the court said:
In this case, the question becomes whether Bowie's claim of legal malpractice calls for expert testimony in order to establish that the Defendants breached their duty of care.... We find the facts in this case are analogous to the facts in Hickox. An attorney who fails to designate an expert by a court-mandated deadline and does not provide any reason for doing so, is negligent as a matter of law, as was the attorney in Hickox. Therefore, Bowie is entitled to partial summary judgment as to the Defendants' liability.

Id. at 905(¶ 18) (emphasis added).
¶ 23. It is obvious, both from the context of the discussion and from the statement of the issues, that all the court was saying is that the Byrd defendants are legally bound for whatever damages Bowie may be able to prove, not that proof of medical negligence, proximate cause, and damages in the medical malpractice case was dispensed with.
¶ 24. Thus, the holding in Byrd I eliminated the need for Bowie, in the legal malpractice case, to prove by separate testimony, expert or otherwise, that Byrd was negligent for failing to designate a medical expert in Montfort Jones. Byrd I also established that, in the legal malpractice case, the Byrd defendants would not be able to withdraw their default admissions, which included an admission that Bowie *1210 was damaged in the amount of two million dollars. The effect of this admission on Bowie's obligation to prove within the legal malpractice case that Lois actually suffered damages at the hands of the medical defendants in Montfort Jones was not addressed in Byrd I. The issues of medical negligence, if any, proximate cause of Lois's death, and damages, which would have to be proven as the third element in Bowie's legal malpractice case against Byrd, were not before the court in either Montfort Jones or Byrd I. Therefore, while I agree with Bowie that the rulings in these cases form the law of the case, they neither prove nor find that no genuine issue of material fact exists with respect to the medical negligence of the Montfort Jones defendants or to the proximate cause of Lois's death.[5] Stated another way, nothing in Montfort Jones or Byrd I speaks to the issues of whether the Montfort Jones defendants deviated from the standard of care owed to Lois, and if so, whether that deviation was the proximate cause of Lois's untimely death.
¶ 25. As stated, the Bowie plaintiffs are required, as a part of their legal malpractice case, to "show that but for [Byrd's] negligence, they would have been successful in the prosecution ... of the underlying [medical negligence] action." Hickox, 502 So.2d at 634. It is true that the Bowie plaintiffs were injured in the sense that Byrd's negligence caused them to lose their right to pursue their medical malpractice lawsuit against the Montfort Jones defendants. However, it is not enough to show that the Bowie plaintiffs lost the opportunity to prosecute their medical malpractice case. In order for the summary judgment to stand, there must be uncontradicted medical expert proof in the record that the Montfort Jones defendants deviated from the standard of care owed to Lois and that that deviation was the proximate cause of Lois's untimely death.
¶ 26. In Hickox, the plaintiffs appealed the judgment of the Circuit Court of the First Judicial District of Harrison County, which sustained a motion for a directed verdict in a medical negligence action and dismissed their legal malpractice action that was brought against the government under the Federal Torts Claims Act. Id. at 628. The Hickoxes argued that the attorney and law firm that represented them caused them "to lose [their] right to pursue a meritorious medical negligence claim against the government" by failing to file their claim before the statute of limitations expired. Id. at 630. The Hickox court found that:

the plaintiff/client carries this burden by trying the underlying medical malpractice claim as a part of this legal malpractice case, not by trying to prove or recreate what would or may have happened in some other court at some other time and place. More specifically, the "success" component of plaintiff's burden involves no attempt to show what would have happened if the Holleman firm had timely brought the Federal Tort Claims Act case. Rather, the issues that would have been tried there are made up and tried in the legal malpractice suit as the first step in plaintiff's claim here.
Id. at 634 (emphasis added).
¶ 27. As stated, in the present case, the Bowie plaintiffs must prove not only that *1211 they would have been successful in their suit against the Montfort Jones defendants, but that they also would have been awarded two million dollars in damages as a result of the Montfort Jones defendants' negligence. The Bowie plaintiffs failed to demonstrate in their motion for summary judgment that there are no genuine issues of material fact regarding these two issues. Even though the admissions were deemed admitted, no admission (1) stated the standard of care and asked Byrd to admit that standard, (2) asked Byrd to admit that the Montfort Jones defendants deviated from the standard of care and that that deviation was the proximate cause of Lois's death, or (3) separately enumerated the liquidated and unliquidated damages. Therefore, in my view there is a genuine issue of material fact with respect to whether the Montfort Jones defendants were negligent, and if so, whether their negligence was the proximate cause of Lois's death. It is only after these questions have been answered in the affirmative that the issue of damages can be addressed. I now turn to a discussion of the admission-of-damages issue.
¶ 28. The issue of whether unliquidated damages can be deemed admitted after a failure to respond to requests for admission is an issue of first impression in Mississippi. I have been unable to find a case from this state that directly addresses this specific issue. However, Byrd has provided this Court with two cases from other jurisdictions: Mountain View Enterprises, Inc. v. Diversified Systems, 133 Ga.App. 249, 211 S.E.2d 186 (1974) and Pratt v. Mattison, 1988 WL 87693, 1988 Tenn.App. LEXIS 539, at *11 (Tenn.Ct.App. Aug. 24, 1988).[6]
¶ 29. In Mountain View Enterprises, Inc., this very issue was before the Georgia Court of Appeals. The plaintiff appealed the decision of the trial court which denied its request for summary judgment after the defendant failed to timely respond to requests for admission. Mountain View Enters., Inc., 211 S.E.2d at 187. The Georgia Court of Appeals reversed the trial judge and ruled that:
The [trial] court erred in denying the motion for summary judgment. The matter admitted through failure to properly respond to the requests for admissions established a complete claim for the relief sought, except as to the unliquidated damages. See Moore v. Hanson, 224 Ga. 482(1), 162 S.E.2d 429, supra; Bailey v. Bailey, 227 Ga. 55, 178 S.E.2d 864, supra. However, the amount of damages, other than the value of the equipment, is unliquidated and required admission and consideration of evidence by the jury in order to determine these amounts.

Id. at 187 (emphasis added). Thus, the Georgia Court of Appeals made clear that unliquidated damage amounts must be determined by a jury.
¶ 30. In Pratt, the plaintiffs appealed the decision of the trial court which declined to award unliquidated damages in the amount of $90,047.49 after the defendant failed to deny certain requests for admission which asked the defendant to admit that he was liable to the plaintiff for unliquidated damages. Pratt, 1988 WL 87693 at *4, 1988 Tenn.App. LEXIS 539 at *1212 *9. The Pratt court found that the following requests "were not proper subjects for a demand for admissions and were properly disregarded by the [t]rial [c]ourt:"
The inconvenience suffered by Mr. Pratt is represented by an amount no less than $10,000.00.
The embarrassment suffered by Mr. Pratt is represented by an amount no less than $10,000.00.
The humiliation suffered by Mr. Pratt is represented by an amount no less than $10,000.00.
The mental suffering and stress suffered by Mr. Pratt is represented by an amount no less than $50,000.00.
To treat his heart attack, Mr. Pratt will incur future medical bills totalling [sic] no less than $36,000.00.
Id. at *4, 1988 Tenn.App. LEXIS 539 at *9-11. The Pratt court also ruled that:
This Court does not understand that the amount of a plaintiff's unliquidated damages is conclusively established by failure of the defendant to respond to a demand for admission of an arbitrary amount of damages.... The fact of the occurrence of such grounds of damage may be so established, and identifiable specific losses or expenses may be so established, but the specific compensation to be awarded for non-monetary or speculative future losses may not be so established.

Id. at *4, 1988 Tenn.App. LEXIS 539 at *11 (emphasis added). The court further held that "[t]he factual assertions of the pleading are admitted, but the amount of unliquidated damages must be independently determined by the finder of facts." Id. at *4, 1988 Tenn.App. LEXIS 539 at *12 (emphasis added) (citing Miss. & T.R. Co. v. Green, 56 Tenn (9 Heisk) 588 (1872)). I find the rulings of the Georgia and Tennessee courts of appeal extremely persuasive.
¶ 31. Had Bowie's medical malpractice claim been successful, they would have been entitled to seek damages pursuant to Mississippi's wrongful death statute, Mississippi Code Annotated section 11-7-13 (Rev.2004). The Mississippi Supreme Court has held that the damages that can be recovered under section 11-7-13 include "the present net cash value of the life expectancy of the decedent; the loss of society and companionship of the decedent; the pain and suffering experienced by the deceased between the time of the injury and the subsequent demise[;] and punitive damages." Jones v. Shaffer, 573 So.2d 740, 743 n. 2 (Miss.1990) (citing McGowan v. Estate of Wright, 524 So.2d 308, 311 (Miss.1988)). Clearly, the total damages that can be awarded include unliquidated damages.
¶ 32. I believe, as found by the Georgia and Tennessee courts of appeal, that as a matter of law, unliquidated damages are not a proper subject for admission under our rules of evidence. Therefore, Byrd's default admission of a blanket amount of damages cannot be the sole basis for a damage award that admittedly would include unliquidated damages. "`Unliquidated' damages are `damages that have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury.'" Moeller, 812 So.2d at 959-60(¶ 18) (quoting Black's Law Dictionary 397 (7th ed.1999)).
¶ 33. In my opinion, the failure to answer a set of requests for admission is akin to the failure to answer a complaint. The Mississippi Supreme Court has made clear that when a defendant fails to answer a complaint that seeks unliquidated damages against him, the plaintiff is not automatically entitled to a judgment in the amount of the damages sought. Capital One *1213 Servs., Inc. v. Rawls, 904 So.2d 1010 (Miss. 2004). In Capital One Services, Inc., our supreme court held that "[a]n on-the-record hearing must be held prior to the entry of default judgment under which unliquidated damages are requested." Id. at 1018(¶ 26) (citing Journey v. Long, 585 So.2d 1268, 1272 (Miss.1991)). Since unliquidated damages are not conclusively established in a default judgment case, I see no reason why they should be conclusively established when a defendant has failed to timely deny requests for admission.
¶ 34. As a final point, I note that based on the inscrutable reasoning of the majority, the Bowie plaintiffs are placed in a better position than they would have been had Byrd not negligently caused their case to be dismissed. Without a doubt, had their medical malpractice case not been dismissed because of Byrd's failures, they would have had to prove that the Montfort Jones defendants were negligent and that that negligence caused Lois's untimely death. Without such proof, they would not have been allowed to have the issue of damages considered by the fact-finder. Therefore, for the reasons stated, I dissent.
LEE, P.J. AND CHANDLER, J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Byrd sought to have the default responses to the Brown parties' requests for admission withdrawn. The trial court refused Byrd's request, and the matter was ultimately upheld by the Mississippi Supreme Court in Byrd v. Bowie, 933 So.2d 899, 907(¶ 29) (Miss.2006) (Byrd I).
[2] Isaac K. Byrd, Jr., Katrina M. Gibbs, and Byrd, Gibbs & Martin, PLLC, f/k/a Byrd & Associates were the defendants in the circuit court and are the appellants here. Unless otherwise indicated, I refer to them collectively as "Byrd." Charles Brown and Willie J. Bowie were the plaintiffs in the circuit court and are the appellees here. I refer to them collectively as "Bowie," although for the sake of clarity they may sometimes be referred to separately or jointly by their individual names.
[3] Willie and Charles are Lois's sole wrongful death beneficiaries.
[4] The two million dollar figure that was listed in the requests for admission, and accepted by the court as the basis for the summary judgment damage award, was taken from a submission made by Byrd in bankruptcy court proceedings involving their legal malpractice insurance carrier.
[5] In Moeller v. American Guarantee & Liability Insurance Co., 812 So.2d 953, 960(¶ 22) (Miss.2002) (quoting Simpson v. State Farm Fire & Cas. Co., 564 So.2d 1374, 1376 (Miss. 1990)), the Mississippi Supreme Court held that "[w]hatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts."
[6] I note that Pratt v. Mattison is an unpublished Tennessee Court of Appeals opinion, and I recognize that Rule 35-B(b) of the Rules of Appellate Procedure prohibits parties from citing unpublished opinions to this Court. However, I do not interpret Rule 35-B(b) as prohibiting attorneys from citing unpublished opinions from other jurisdictions. Moreover, I do not interpret Rule 35-B(b) as preventing this Court from considering unpublished opinions from other jurisdictions.