# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CT-00971-SCT

### CONSOLIDATED WITH

## NO. 97-CT-01053-SCT

### AND

## NO. 97-CT-01161-SCT

*KARIN KING THOMPSON*

*v.*

*CARLOS S. PATINO, M. D.,*

*JOHN P. GORECKI, M. D.,*

*AND ST. DOMINIC-JACKSON*

*MEMORIAL HOSPITAL*

## ON MOTIONS FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/1997 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BARRY W. GILMER |
| ATTORNEYS FOR APPELLEES: | GEORGE QUINN EVANS |
| | ALLEEN McCLAIN |
| | STEPHEN P. KRUGER |
| | JAN F. GADOW |
| | CHRISTOPHER A. SHAPLEY |
| | KATHYRN GILCHRIST |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 05/10/2001 |
| MOTION FOR REHEARING FILED: | 05/04/2000 |
| MANDATE ISSUED: | 5/31/2001 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. The motions for rehearing are denied. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2. This appeal concerns what sanctions are appropriate for a discovery violation in a civil action. In this medical malpractice case, the circuit court struck as untimely the plaintiff's supplementation of discovery responses identifying her expert witnesses and struck the affidavit of one of the plaintiff's experts submitted in opposition to the defendants' summary judgment motions. The circuit court then granted the summary judgment motions and dismissed the plaintiff's action. The Court of Appeals affirmed. We granted certiorari to consider the question of whether this sanction is consistent with this Court's case law on the matter.

¶3. After due consideration, we find that the Circuit Court of the First Judicial District of Hinds County, Mississippi, abused its discretion in striking the plaintiff's discovery supplementation concerning her expert witnesses and the affidavit of her expert with the result that the circuit court erred in ruling on the defendants' summary judgment motions without considering the plaintiff's expert affidavit and supplemental responses. We, therefore, reverse the judgments of the circuit court and the Court of Appeals and remand this case to the circuit court for further proceedings in accordance with this opinion.

## STATEMENT OF THE CASE AND FACTS

¶4. On February 9, 1993, Karin King Thompson underwent neurological surgery at St. Dominic-Jackson Memorial Hospital in Jackson, Mississippi. The surgery was performed by John P. Gorecki, M. D., with Carlos S. Patino, M. D., serving as anesthesiologist. Following surgery, Thompson's tongue became severely swollen. As a result, she began experiencing breathing difficulty and went into cardiac arrest. Medical personnel performed an emergency tracheostomy. On February 16, 1994, Thompson filed this suit for damages in the Circuit Court of the First Judicial District of Hinds County, Mississippi, alleging medical malpractice and naming Dr. Patino, St. Dominic, and ten unnamed individuals as defendants.

¶5. On March 11, 1994, St. Dominic served Thompson with interrogatories and requests for production of documents. On March 15, 1994, Dr. Patino did likewise. One of Dr. Patino's interrogatories requested that Thompson name the experts whom she intended to call at trial and the substance of the facts and opinions about which the experts were expected to testify.

¶6. After Thompson failed to respond to the discovery requests, on May 16, 1994, and June 8, 1994, St. Dominic and Dr. Patino filed motions to compel. On June 17, 1994, the circuit court ordered Thompson to respond to the discovery within 7 days.

¶7. On June 24, 1994, Thompson served St. Dominic and Dr. Patino with her responses to their interrogatories. Therein she named Bernard Patrick, M. D., and William Causey, M. D., as expert witnesses but she failed to state what their opinions would be.

¶8. On July 14, 1994, Thompson filed a motion for extension of time to conduct discovery. On February 10, 1995, Thompson amended her complaint to add Dr. Gorecki as a defendant. By agreed order dated September 25, 1995, the circuit court extended discovery for 90 days.

¶9. In September, 1996, Thompson deposed Dr. Gorecki.

¶10. On October 18, 1996, Thompson requested an additional 60 days of discovery. The trial court denied this request by order dated December 23, 1996.

¶11. In November, 1996, Thompson's counsel's office was destroyed by fire, and her file had to be reconstructed.

¶12. On February 5, 1997, Dr. Patino filed a motion to dismiss, or, alternatively, for summary judgment. Prior to the filing of Dr. Patino's motion, Thompson had not supplemented her responses to interrogatories.

¶13. On February 10, 1997, Thompson supplemented her responses to interrogatories to St. Dominic and Dr. Patino, and named for the first time William Wilson, M. D., as an expert in neurosurgery, and Herbert Ferrari, M. D., as an expert in anesthesiology.

¶14. On February 14, 1997, Dr. Patino filed a motion to strike Thompson's supplemental responses.

¶15. On February 18, 1997, Thompson filed her response to Dr. Patino's motion for summary judgment. On February 21, 1997, Thompson filed Dr. Ferrari's affidavit wherein he averred that Dr. Patino breached the duty of care owed to Thompson.

¶16. In response to Dr. Patino's motion to strike her supplemental responses, Thompson argued that she had learned additional information during Dr. Gorecki's deposition that caused the delay in naming Dr. Wilson and Dr. Ferrari as expert witnesses. On March 24, 1997, the circuit court granted the motion to strike, finding that Thompson had sued Dr. Patino in 1994 and could have proceeded against Dr. Patino no matter what Dr. Gorecki said in his deposition. Therefore, awaiting Dr. Gorecki's deposition was not a legitimate excuse for failure to name her experts as to Dr. Patino. The circuit court found that the supplemental responses were tardy and should be stricken.

¶17. On March 31, 1997, Dr. Patino moved to strike Dr. Ferrari's affidavit. Dr. Patino argued that, because the discovery responses naming Dr. Ferrari as an expert witness had been stricken, Dr. Ferrari could not could not testify at trial and he could not submit an affidavit opposing summary judgment. By order dated July 10, 1997, the circuit court struck Dr. Ferrari's affidavit and granted summary judgment for Dr. Patino.

¶18. On August 5, 1997, the trial court granted summary judgment as to Dr. Gorecki.

¶19. On August 13, 1997, the trial court granted summary judgment as to St. Dominic.

¶20. On appeal, noting that Thompson had filed suit in February, 1994, was given until December, 1995, to complete discovery, and filed the discovery responses pertaining to her expert witnesses in February, 1997, the Court of Appeals found that the circuit court had not abused its discretion in striking the discovery responses and expert affidavit. *Thompson v. Patino*, No. 97-CA-00971-COA (Miss. Ct. App. May 18, 1999). Furthermore, because Thompson had no expert witnesses or affidavits in support of her claims, the Court of Appeals found that the circuit court did not err in granting summary judgment in favor of the defendants.

## DISCUSSION

¶21. Karin King Thompson raises six issues on certiorari. We find one issue dispositive and will not discuss

the others.

¶22. "In regard to matters relating to discovery, the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion." *Dawkins v. Redd Pest Control Co.*, 607 So. 2d 1232, 1235 (Miss. 1992). In *Robert v. Colson*, 729 So. 2d 1243, 1246 (Miss. 1999), this Court found that Rule 26 of the Mississippi Rules of Civil Procedure

> provides for seasonable supplementation of answers. We have held "seasonable supplementation" to mean soon after new information is known and far enough in advance of trial for the other side to prepare. We have not, however, set a "hard and fast rule as to what amounts to seasonable supplementation or amendment of answers." *Eastover Bank for Sav. v. Hall*, 587 So. 2d 266, 272 (Miss.1991). Our decisions addressing what constitutes a seasonable supplementation focus on the necessity to avoid surprise at trial. *See, e.g., Foster v. Noel*, 715 So. 2d 174, 182-83 (Miss. 1998) (stating Rule 26 requires strict compliance to avoid unfair surprise); *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 721 (Miss. 1995) (affirming trial court's exclusion of certain expert testimony elicited at trial but not found in answers to interrogatories and stating seasonable supplementation requires supplementation when new information renders initial response inadequate); *Motorola Communications & Elecs., Inc. v. Wilkerson*, 555 So. 2d 713, 717-18 (Miss. 1989) (requiring seasonable disclosure give enough time to prepare before trial); *Jones v. Hatchett*, 504 So. 2d 198 (Miss. 1987) (stating purpose of our civil discovery procedures is to prevent trial by ambush).

¶23. Thompson argues that she was held to an improper standard and that her discovery responses should not have been stricken because they amounted to a seasonable supplementation. In *Robert v. Colson*, Robert filed her complaint in February, 1996. On March 24, 1997, Dr. Colson moved to dismiss or compel Robert to identify her expert. A trial date was set for December 8, 1997. On March 25, 1997, Robert properly supplemented her discovery responses with respect to expert testimony. The circuit court struck Robert's response on its own motion in August, 1997. This Court reversed and remanded, finding that Robert's initial answer that she had not made any decision as to experts was appropriate when given, and was seasonably supplemented such that dismissal was not appropriate.

¶24. In this case the complaint was filed in February, 1994. The defendants filed motions to compel in May and June, 1994. Thompson identified experts in June, 1994 but failed to state what their opinions were. By agreement discovery was extended until December, 1995. Thompson's subsequent request for extension of discovery in 1996 was denied. Thompson identified Dr. Wilson and Dr. Ferrari as experts in February, 1997. A trial date had not been set at the time of dismissal, though there is some discussion in the record of January, 1998, being the earliest possible date for trial.

¶25. Thompson's counsel was more neglectful of her case than the attorney in *Robert*. However, we find that the penalty should have been something less drastic than striking Thompson's supplemented responses and Dr. Ferrari's affidavit. *See Mississippi Power & Light Co. v. Lumpkin*, 725 So. 2d 721, 733 (Miss. 1998) (exclusion of evidence due to discovery violation is extreme measure). One significant factor in *Robert* and other cases decided by this Court is the substantial length of time between supplementation and a trial date, or lack of a trial date altogether. The circuit court, in making its ruling, gave a detailed recitation of the events of the case and obviously felt that the failure of Thompson's counsel was deliberate or at least seriously negligent. Sanctions were appropriate, but the exclusion of medical expert evidence

which prompted the dismissal of Thompson's action amounted to an abuse of discretion under the facts of this case.

¶26. On motion for rehearing, Dr. Patino argues that, to reverse and remand, because of sanctions imposed in *Thompson*, we must overrule three cases: *Palmer v. Biloxi Reg'l Med. Ctr.*, 564 So. 2d 1346 (Miss. 1990); *Cunningham v. Mitchell*, 549 So. 2d 955 (Miss. 1989); and *Kilpatrick v. Biloxi Reg'l Med. Ctr.*, 461 So. 2d 765 (Miss. 1984). Dr. Patino argues that "[t]o ignore these cases results in inconsistent opinions from this Court regarding both the validity and enforceability of court orders and the necessity of responding to expert interrogatories in a medical malpractice case where a *prima facie* case requires such expert testimony." The Court will address each of these cases.

¶27. Dr. Patino states that, in *Palmer*, the Court held that, "[B]ut for the defendant's own procrastination and bad faith, . . . a plaintiff in a medical malpractice case who waits three years to respond to expert interrogatories may expect her case to be dismissed with prejudice." There, summary judgment was granted to the defendant physicians for three reasons: (1) because the experts proffered by the plaintiff were disqualified by the court; i.e., they did not have the appropriate credentials to testify as to causation or their opinions were not based on specific facts; (2) because Palmer had not presented a genuine issue of material fact; and (3) because Palmer had failed to respond to discovery. 564 So. 2d at 1356-63.

¶28. On appeal, we discussed timeliness in the designation of expert witnesses:

> The first reason for which the trial judge granted [defendants'] motion concerned Palmer's failure to respond to discovery. Indeed, Palmer's conduct was so egregious that even a harsh sanction as dismissal may be warranted. . . .
>
> * * *
>
> . . . BRMC propounded interrogatories to Palmer on May 12, 1983. On September 19, 1983 -- over four months *after* BRMC filed the interrogatories and nearly two months *after* BRMC filed a motion to compel a response -- Palmer answered the interrogatories . . . regarding expert witnesses, their opinions, and bases for their opinions. [Palmer finally responded that he had not yet decided on whom to designate.] Palmer did not provide a supplemental answer . . . until July 3, 1986, and August 22, 1986 -- over three years *after* BRMC filed the interrogatories and approximately four months *after* Palmer employed the experts. . . .
>
> Additional time to respond to BRMC's interrogatories was *never* requested. . . .

*Id*. at 1356, 1366-67 (emphasis in original). While the Court found that Palmer's dilatory conduct was "egregious," it found that the defendants had procrastinated also and that the sanction of dismissal of the plaintiffs' complaint was too harsh a sanction.

¶29. *Palmer* is distinguished because summary judgment was appropriate for three reasons, including failure to respond to discovery. In the case at bar, Thompson's experts have not been disqualified and there has been no finding that a genuine issue of fact has not been raised.

¶30. Dr. Patino contends that *Thompson* is indistinguishable from *Cunningham*, where we found no abuse of discretion when the trial court dismissed plaintiff's case with prejudice for failure to respond to discovery and comply with court orders. A review of the case shows that, not only did Cunningham not

respond to discovery, but her counsel:

(1) Initially failed to answer the interrogatories even after opposing counsel had granted her more time due to the hurricane.

(2) Did not notify the court that she would not be present at the motion to compel.

(3) Still did not answer the interrogatories after being granted an additional twenty days by the trial court, even if the hearing was void.

(4) Replied falsely to the trial court when she stated that she did not know that discovery had not been complied with when she admitted receiving a notice from the trial court stating that discovery was incomplete.

(5) Told a falsehood to the trial court during the November 6, 1985 hearing; stating that there was a signed under oath copy of the answers to the interrogatories that were mailed back in September but what she later filed with the court was poorly answered interrogatories that were not signed under oath and were dated November 7, 1985.

(6) The poorly filed interrogatories did not establish possible negligence on Mitchell's part with expert testimony. These facts would tend to support dismissal with prejudice.

549 So. 2d at 959-60. Clearly, *Cunningham* is distinguishable. Not only did Cunningham's counsel engage in deceitful behavior, but a question of fact concerning negligence was never established.

¶31. Finally, Dr. Patino claims that *Thompson* is indistinguishable from *Kilpatrick*, where we found there was no abuse of discretion when the case was dismissed with prejudice because the plaintiff failed to disclose any medical expert for three years after an interrogatory requesting the same was propounded. There, we held that failure to respond to expert interrogatories is sanctionable conduct, but called dismissal as a result a "drastic" sanction. 461 So. 2d at 768. In *Kilpatrick*,

The defendant Williams sought and received a court order compel[l]ing discovery of the plaintiff . . . as to identity and opinion of the plaintiff's expert by June 8, 1981. On May 27th, the plaintiff filed his supplemental response and stated as to expert witnesses question the answer "none at this time." On June 8 the plaintiff asked for 21 days additional time "to produce an expert medical witness." The grounds stated by Kilpatrick were: (1) his open heart surgery and (2) conflicting schedule of a proposed expert witness, Dr. Frazier Ward, III. The trial judge, on June 22, 1981, dismissed the suit as to the defendant Dr. T. K. Williams.

The remaining two defendants waited eight months and adopted the same interrogatories as Dr. Williams and renoticed the plaintiff to answer the same interrogatories as to medical expert witnesses or suffer dismissal with prejudice as to the remaining two defendants. The renotice of motion to dismiss o[n] remaining defendant[s] was filed November 30, 1982 setting February 11, 1983 as the hearing date. The dismissal with prejudice as to the remaining defendants was entered October 11, 1983.

The initial request for 21 additional days time contained allegations of grounds that may be meritorious, but nonetheless the trial judge did not act on the request for 14 days thereafter. The

> plaintiff took no action as to the two remaining defendants for over two years thereafter.
>
> * * *
>
> When the case against the first appellee, Dr. Williams, was dismissed, the sanction had been announced in advance in the court's order compelling answer to the interrogatories. When the remaining appellees were granted a dismissal nearly three years had passed since the appellant was first requested to name his medical experts. There is no evidence that this was not adequate time in which to begin to prepare a case apart from appellant's contention of impossibility because of the "situation and circumstances."

*Id.*, 461 So. 2d at 767-68. *Kilpatrick* is distinguished from the factual situation presented here because the Kilpatrick was repeatedly warned that dismissal would occur if he did not comply with the court's orders. Also, no proof of negligence was never presented.

¶32. There is no question Thompson could have done more. She should have made an interim supplementation of her experts' proposed testimony and then supplement again after taking Dr. Gorecki's deposition. On the other hand, Dr. Gorecki's testimony was critical, and a lot of the delay can be attributed to problems in scheduling that deposition, which was not taken until September 4, 1996.

¶33. Thompson pursued her case not perfectly but fairly diligently from filing until dismissal. Prior to the hearings on the motion to dismiss, Thompson supplemented in detail and presented possible arguable questions of fact of medical negligence. Such actions and a viable claim were absent from *Palmer, Cunningham* and *Kilpatrick*. Dismissal of Thompson's case was not appropriate.

## CONCLUSION

¶34. The judgments of the Hinds County Circuit Court and the Court of Appeals are reversed, and this case is remanded to the Hinds County Circuit Court with directions that the trial court: (1) impose a less severe sanction for Thompson's tardy discovery response supplementation; (2) decide the summary judgment motions after considering all of Thompson's responses and affidavits; and (3) conduct such other proceedings as may be appropriate and consistent with this opinion.

¶35. **REVERSED AND REMANDED.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., COBB AND EASLEY, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. DIAZ, J., NOT PARTICIPATING**.

> SMITH, JUSTICE, DISSENTING:

¶36. I conclude that the Court of Appeals was correct in finding that Judge Graves did not abuse his discretion in striking the discovery responses and expert affidavit based on the unusual facts of this case. The trial court set out in great specificity the reasons for taking such drastic action. The court found that Thompson's counsel had selected her expert witness more than two and a half years prior to the court's order compelling her to answer the defendant's first set of interrogatories which is at issue. The court also granted at least one ninety-day extension of discovery. Almost three years after filing her complaint and only upon the filing by Dr. Patino for summary judgment did Thompson file her supplemental response and

disclose the name of all of her experts and their opinions.

¶37. The majority claims to be mindful of the rule that, "in regard to matters relating to discovery, the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion." *Dawkins v. Redd Pest Control Co.,* 607 So. 2d 1232, 1235 (Miss. 1992). Also, this Court has held that a motion to strike interrogatory answers is an appropriate option to pursue in response to untimely answers. *Martin v. Simmons*, 571 So.2d 254, 258 (Miss. 1990). However, it appears the majority simply is substituting its judgment for that of the trial court. Although relying upon *Robert v. Colson*, 729 So. 2d 1243 (Miss. 1999), the majority readily admits that "Thompson's counsel was more neglectful of her case than the attorney in *Robert.*" In *Robert*, the trial judge on its own motion struck the supplemental response and granted summary judgment, whereas here, such is not the case. Besides, neglect does not appear to be the reason for the trial judge's actions in this case. It is readily apparent from the record that the trial judge believed that the plaintiff's seriously long delays in responding were deliberate. His actions were not erroneous, and, as such, the trial judge did not abuse his discretion.

¶38. Further, this Court in *Flour Corp. v. Cook*, 551 So.2d 897, 903 (Miss. 1989), held that when party fails to comply with a discovery request, the reasons for that failure to comply must be considered before a sanction is imposed. If a party is simply unable to comply, an action may not be dismissed for his discovery violation. However, if the violation is a result of "willfulness, bad faith, or any fault of the party," dismissal may be justified. *Id*. There are specific rules dictated by the Mississippi Rules of Civil Procedure that must be followed in order to insure that lawsuits progress in a timely fashion. It simply must not take parties in lawsuits almost three years to answer simple discovery requests, as it did here. As in *Flour Corp.*, this kind of action demonstrates deliberateness, willfulness and negligence which the learned trial judge clearly recognized.

¶39. In addition, the trial court had issued its order compelling disclosure which was ignored by Thompson's counsel. One must wonder, had not Dr. Patino filed his motion to dismiss or alternatively for summary judgment, when, if ever, would Thompson have filed her court-ordered supplemental responses? The majority cites to several cases and discusses the lack of a trial setting. In addition, it discusses what is meant by "seasonable supplementation." We have held "seasonable supplementation" to mean soon after the new information is known and far enough in advance of trial for the other side to prepare. *Robert,* 729 So.2d at 1246. I would affirm the Court of Appeals and the trial court.

¶40. I respectfully dissent.

**MILLS, J., JOINS THIS OPINION.**