803 So.2d 504 (2002)
Jessica MALLET, Appellant
v.
Richard C. CARTER, M.D., Appellee.
No. 2000-CA-01301-COA.
Court of Appeals of Mississippi.
January 8, 2002.
*505 Joyce W.C.N. Funches, Jackson, Attorney for Appellant.
Heber S. Simmons, III, Jackson, C. York Craig, III, Attorneys for Appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. On September 18, 1998, plaintiff, Jessica Mallet, filed a complaint against Dr. Richard Carter, M.D. alleging medical malpractice based on the death of her infant child. Dr. Carter responded with a motion for summary judgment filed on June 23, 2000. The basis of Dr. Carter's motion was the plaintiffs failure to timely designate an expert witness as required to *506 prosecute a medical malpractice action. On July 11, 2000, the Circuit Court for Attala County granted Dr. Carter's motion and denied Mallet additional time to designate an expert witness. Feeling aggrieved, Mallet filed this appeal and alleges that the circuit court erred in granting Dr. Carter's motion for summary judgment.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On June 18, 1997, Mallet saw Dr. Carter for complaints of abdominal cramps and blood present in her urine. At the time, Mallet was eighteen years old and five months pregnant. Dr. Carter's examination of Mallet revealed symptoms consistent with an urinary tract infection. An urinalysis was administered and no blood was found in the urine. These test results, combined with Mallet's previous medical history, led Dr. Carter to believe Mallet was experiencing an urinary tract infection which he treated with antibiotics.
¶ 4. Later that same day, Mallet returned to the hospital with heavy vaginal bleeding and passage of clots. An examination revealed that she was in labor. Mallet was transferred to the University of Mississippi Medical Center where the child was delivered. The baby survived only four hours after delivery.
¶ 5. Mallet filed suit against Dr. Carter alleging that he committed medical malpractice and was negligent in his treatment of her on June 18, 1997. The trial court entered a scheduling order in this case on October 4, 1999. Pursuant to the scheduling order, she was required to designate an expert witness by December 10, 1999. On December 6, 1999, she filed a motion for additional time to designate experts. In that motion, Mallet requested an extension until January 10, 2000, in which to designate her medical experts. Dr. Carter timely responded to the motion, but Mallet did not notice her motion for hearing until June 30, 2000, after Dr. Carter had filed his second motion for summary judgment on June 23, 2000, and noticed the motion for hearing on July 11, 2000. Additionally, Mallet did not file a response to the summary judgment motion until July 7, 2000, yet another untimely response. The trial court heard Mallet's motion at the same time it heard Dr. Carter's motion for summary judgment. At that time, Mallet attempted to designate Dr. Henry Edward Irby as her medical expert. Mallet's motion was denied and Dr. Carter's motion for summary judgment was granted. The trial court noted that Mallet had allowed her motion to sit for seven months with no action of any kind taken to prosecute the motion. The court found that the motion had been abandoned and was untimely at the time of hearing. Because Mallet did not have an expert witness to support her allegations of malpractice, Dr. Carter's motion for summary judgment was granted.

LAW AND ANALYSIS

I. DID THE TRIAL COURT ERR IN GRANTING DR. CARTER'S MOTION FOR SUMMARY JUDGMENT?
¶ 6. Mallet argues on appeal that the trial court abused its discretion in dismissing her complaint with prejudice. She asserts that the sanction imposed by the court because of her failure to comply with discovery deadlines was too severe. "In regard to matters relating to discovery, the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion." Dawkins v. Redd Pest Control Co., 607 So.2d 1232, 1235 (Miss.1992).
*507 ¶ 7. A careful reading of the record in this case reveals that the trial court did not abuse its discretion in refusing to allow Mallet further time to designate an expert witness and by striking the affidavit of Dr. Irby. Mallet did not notice her motion for hearing until after Dr. Carter had filed his second motion for summary judgment. Dr. Carter's first motion for summary judgment was filed on February 25, 2000, after discovery had expired. On March 20, 2000, that motion was granted on the basis that Mallet had failed to designate an expert witness. Mallet did not respond to this motion until March 28, 2000, when she filed a motion to vacate summary judgment, wherein she alleged that she had not received sufficient notice of the prior summary judgment hearing. On May 4, 2000, because of a possible confusion in the hearing date, the trial court granted Mallet's motion and granted Dr. Carter leave to renotice his motion. The first summary judgment decision was more than sufficient to put Mallet on notice that if she did not designate an expert witness, her case would be dismissed; however, she failed to take any further action in the case until June 30, 2000, after Dr. Carter had renoticed his motion for summary judgment. Although she had substantial prior notice, Mallet once again failed to meet the proper deadlines for filing. She did not answer Dr. Carter's motion until July 7, 2000, and Dr. Carter did not receive her response until July 10, 2000, just one day before the hearing.
¶ 8. At the hearing on the motions, Mallet failed to present any credible reason for her delay in designating an expert or for failing to meet other discovery deadlines. Counsel for Mallet stated, "Your Honor, I agreed to their designation of the expert schedule. If, for any reason, I did not know that, I did not realize it was going to be such a problem, if I had realized it was going to be such a problem, I would probably not have done so." In respect as to why she failed to take any action after the first summary judgment hearing, she stated, "[a]nd I understand, your Honor, when I came here, the last time you brought it to my notice that I did not bring the motion for hearing. However, this case, your Honor, had not been set for any hearing or any other thing that had happened to the case." These statements are not reasonable explanations for Mallet's failure to comply with court orders and the Mississippi Rules of Civil Procedure. The court is not responsible for the fact that Mallet was unable to locate a local expert witness. Also, as admitted by Mallet, she had been previously warned by the court that she was delinquent in designating an expert.
¶ 9. In Fluor Corp. v. Cook, 551 So.2d 897, 903 (Miss.1989), the court held that a court should consider the reasons why a party fails to comply with a discovery request. If the party is unable to comply, the action should not be dismissed on the basis of the discovery violation. Id. However, if the violation is the result of "wilfulness, bad faith, or any fault of the party," dismissal may be proper. Id. In this case, Mallet failed to meet the deadline by more than seven months. Her only excuse was it was harder than she had imagined it would be to find a local witness. Also, it should be noted that Mallet admitted to having found an expert in Florida who would have testified for her. She decided to forego this physician's services and disregard court ordered deadlines in an attempt to locate a local doctor. The resultant discovery violations could clearly be determined to have been at the fault of the plaintiff. The Mississippi Supreme Court has held that a trial judge may impose sanctions upon a plaintiff who was dilatory in the prosecution of his suit. Palmer v. Biloxi Regional Medical Center, *508 564 So.2d 1346, 1370 (Miss.1990). "Trial courts have inherent authority and duty to control their dockets for orderly disposal of business." Id. (quoting Harris v. Fort Worth Steel & Mach. Co., 440 So.2d 294, 296 (Miss.1983)). In George County v. Davis, 721 So.2d 1101 (¶ 14) (Miss.1998), the court quoted from Uniform Rules of Circuit and County Court Rule 2.04,
It is the duty of the movant, when a motion or other pleading is filed, including motions for new trial, to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion....
¶ 10. Recently, the Mississippi Supreme Court has reversed the decision of a lower court to grant summary judgment in the defendant's favor based upon the plaintiffs failure to timely respond to discovery and failure to timely designate an expert witness. Thompson v. Patino, 784 So.2d 220 (¶ 3) (Miss.2001). This case is distinguishable from Thompson. In Thompson, the discovery violations continued for a longer time than in the case sub judice; however, the Thompson court noted that there was no finding that a genuine issue of material fact had not been raised. Id. at (¶ 29). Such a finding was made in this case. At the motion hearing, the trial judge found that the affidavit of Dr. Irby should be stricken as untimely. However, he did review the document to determine, whether if it were to be allowed, it would be sufficient to create a genuine issue of material fact. The trial judge said it did not create a material issue. He stated, "[i]t is a broad statement with no causal connection whatsoever between the injuries suffered by the plaintiff and anything that Dr. Carter may have done." This statement supports the second reason for granting the summary judgment; there was no evidence of a causal connection between Dr. Carter's treatment of Mallet and the death of her child.
¶ 11. Case law requires that in a medical malpractice action, negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care. Palmer, 564 So.2d at 1355. Unless the issue under consideration is within the common knowledge of laymen, expert testimony is required. Id. An expert is necessary to determine the applicable standard of care, that the physician's actions breached the standard of care and that such breach was the proximate cause of the plaintiffs injuries. Id.; Phillips v. Hull, 516 So.2d 488, 491 (Miss. 1987).
¶ 12. The affidavit of Dr. Irby fails to meet this standard. Dr. Irby does attest that Dr. Carter breached the standard of care but he does not define what the standard of care is, nor does he provide the court with any evidence that the alleged breach caused the death of Mallet's child. Dr. Irby states that Dr. Carter should have performed a pelvic examination on Mallet. Irby does not indicate that an exam would have revealed the problem or that Dr. Carter's failure to perform an exam would have saved the child's life. Mallet was five months pregnant when she was seen by Dr. Carter. Dr. Irby's affidavit should have supplied the court with the proper standard of care and the appropriate treatment of a young mother, five months along, who complains of bleeding and pain.
¶ 13. Mallet filed suit against Dr. Carter alleging medical malpractice. She was then either unable to find a local expert to support her position or acted wilfully in failing to try and find such an expert. She continually ignored court orders and failed to prosecute the case she filed. The affidavit of the expert she finally submitted to *509 the court was insufficient to establish that Dr. Carter's actions were the cause of her child's death. For these reasons, the judgment of the lower court is affirmed.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., MYERS AND BRANTLEY, JJ., CONCUR. LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., BRIDGES, THOMAS AND IRVING, JJ.
LEE, J., dissenting.
¶ 15. While I have respect for the analysis applied by the majority; nevertheless, I dissent. Mallet claims that the trial judge's granting of the summary judgment motion was an abuse of discretion because it was too harsh a sanction, and additional time for trial preparation on the issues was needed. To the contrary, Dr. Carter asserts that the granting of the motion for summary judgment was proper because not only were Mallet's actions untimely, but she failed to present any significant, probative expert testimony in support of her claim for medical malpractice.
¶ 16. The lower court is vested with the discretion to grant a summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Collier v. Trustmark Nat'l Bank, 678 So.2d 693, 695 (Miss.1996); M.R.C.P. 56. The standard of review on appeal when a trial judge grants a motion for summary judgment allows this Court to review the record de novo to determine if there was error on the part of the trial judge in granting the motion. Id. In a motion for summary judgment, the movant and nonmovant maintain burdens of production paralleling their burdens of proof at trial. Id. at 696. In order to overcome a motion for summary judgment when the issue is not within the common knowledge of laymen, in the case of medical negligence, the plaintiff is required to offer by affidavit, or otherwise, expert testimony. Phillips v. Hull, 516 So.2d 488, 491 (Miss.1987). The party which seeks to recover for negligent treatment and/or performance must show by a preponderance of the evidence that the defendant had a legal duty, that he breached that duty when he failed to conform to the required standard of care, that this breach was the proximate cause of the injury, and that damages were suffered. Id. The party that is seeking summary judgment has the burden of persuading the trial judge that there are no genuine issues of material fact, and that based upon the facts, he is entitled to a summary judgment. Id. As stated by the majority, Mallet does not dispute that it was incumbent upon her to provide expert testimony. Instead, she asserts that some other sanction should have been imposed for her untimely designation of her expert witness.
¶ 17. At the final hearing on the motion for summary judgment Mallet argued her motion for additional time to designate an expert. During the portion of the hearing regarding Mallet's request for additional time to designate experts, counsel for Mallet explained the reasons for delay. Counsel for Mallet contended that she had previously spoken with a gynecologist who practiced in Mississippi who had stated that the actions or inactions of Dr. Carter constituted medical malpractice. Nevertheless, the physician later refused to execute an affidavit stating the same. Thereafter, counsel stated she had spoken with physicians in Florida, but decided against their designation because Dr. Carter had *510 designated a physician from Mississippi. As of the date of the hearing, Mallet had a physician, Henry Edward Irby, M.D., from Mississippi that would testify that Dr. Carter had breached his duty.
¶ 18. In response to Mallet's motion, the trial court concluded that Mallet's failure to take action on the motion for additional time to designate experts for approximately seven months made the motion untimely and denied the motion. Additionally, the trial court struck the affidavit of Dr. Irby as untimely, since the hearing on summary judgment was held on July 11, 2000, and it was not filed with the court until July 7, 2000. The trial judge concluded that when the affidavit was struck he had no medical evidence to prove a breach of the standard of care by Dr. Carter and the motion for summary judgment was granted.
¶ 19. The trial judge initially relied on the fact that Mallet's actions were in violation of a scheduling order, as well as untimely when he granted the motion for summary judgment. However, a trial judge may not use procedural violations as a basis for granting a motion for summary judgment. See Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1356 (Miss. 1990). I agree with the trial judge that the actions of Mallet's attorney were clearly untimely and should not be condoned. Nevertheless, I conclude that the granting of the summary judgment on this basis was improper. In turn, I must examine the substance of the affidavit of Dr. Irby.
¶ 20. Dr. Irby's affidavit in part, stated:
2. I have reviewed the medical records of Jessica Mallet relative to her 1997 pregnancy, and the role of Richard Carter, M.D. A copy of the medical records I have reviewed are attached as exhibit A and incorporated by reference.
3. Jessica Mallet, at the time she was examined [by] Dr. Carter, was an 18 year old African American female. She was pregnant. Pre-natal care had been rendered by the Attala County Health Department. The Health Department referred her to Dr. Carter. On June 18, 1997, Jessica Mallet visited Dr. Carter at Methodist Clinic complaining of bleeding and pain. Urinalysis was ordered by Dr. Carter. Dr. Carter did not conduct a pelvic examination. Dr. Carter diagnosed an urinary tract infection and prescribed medication.
4. Later on June 18, Ms. Mallet experienced worsening symptoms, including heavy vaginal bleeding and passage of clots. She was taken to Monfort Jones Hospital in Kosciusko. Examination revealed advanced cervical dilation of 6-8 cms. Ms. Mallet transferred to University Medical Center where delivery occurred soon after arrival. The newborn dies four (4) hours after delivery.
5. It is my opinion, to a reasonable degree of medical probability, that the care and treatment rendered to Jessica Mallet by Dr. Carter was not appropriate under the circumstances and [he] did breach the standard of care, in that Dr. Carter failed to conduct a speculum pelvic examination of Jessica Mallet when she first visited him on June 18. The symptoms which were presented to Dr. Carter on that date mandated that at least a speculum pelvic examination be conducted.
A review of Dr. Irby's affidavit does not support the trial judge's conclusion that it failed to establish a causal connection between the death of Mallet's newborn child and any action or inaction by Dr. Carter. Instead, I conclude that the affidavit presents a fact question which a jury could decide regarding whether the lack of a pelvic examination by Dr. Carter resulted in the death of Mallet's newborn child.
*511 ¶ 21. A review of the record discloses that while Mallet's attorney was extremely dilatory in her actions regarding this case, Mallet's burden of proof was met with the presentation of Dr. Irby's affidavit.
KING, P.J., BRIDGES, THOMAS AND IRVING, JJ., JOIN THIS SEPARATE WRITTEN OPINION.