DICKINSON, Presiding Justice,
for the Court:
¶ 1. After Robert Allcock died at a hospital, his mother sued the hospital, the treating doctor, and the doctor’s clinic. Allcock failed to designate an expert, and the trial court denied her motion to amend the pretrial order. Still, a jury found for Allcock, but the trial court granted the defendants’ motion for a new trial because of a faulty jury instruction. Before the second trial, Allcock again moved to amend the pretrial order. The trial court again denied her motion, and the jury found for the defendants. Because the jury instruction stated an incorrect rule of law; and because Allcock was on sufficient notice of the defendants’ expert testimony, we affirm the trial court’s rulings.
BACKGROUND FACTS AND PROCEEDINGS
¶ 2. Robert Allcock Sr. and his wife Denise became concerned that their son, Robert Allcock, was showing signs of diabetes, so they took him to the emergency room where Dr. Antoinette Bannister — who practiced with Long Beach Children’s Clinic and was the on-call doctor — diagnosed Robert with initial onset diabetes, admitted him into Memorial Hospital in Gulfport, and dictated the admission orders to ER Nurse Laura Quave.
¶ 3. Dr. Bannister testified that she ordered normal saline, plus twenty milliequi-valents of potassium phosphate and twenty milliequivalents of potassium chloride, but Nurse Quave testified that Dr. Bannister dictated normal saline, plus twenty millie-quivalents of potassium chloride phosphate and twenty milliequivalents of calcium chloride. According to Dr. Bannister, when the floor nurse, Cathy Marousky, called her for clarification of the order, she reiterated her order to Nurse Marousky. But Nurse Marousky testified that Dr. Bannister ordered twenty milliequivalents of potassium chloride, twenty milliequiva-lents of potassium phosphate, and twenty milliequivalents of calcium chloride. Robert died as a result of the mixture in the IV bag. When Dr. Bannister examined Robert’s IV bag, she noted it was cloudy and contained calcium chloride — which she says she did not order.
*793 ¶ 4. Denise Allcock, as administrator on behalf of the wrongful-death beneficiaries and Robert’s estate, sued Dr. Bannister, The Children’s Clinic, and Memorial Hospital. Allcock eventually settled with and dismissed Memorial, leaving Dr. Bannister and The Children’s Clinic as the remaining defendants.

First-trial discovery

¶ 5. On August 19, 2005, Allcock designated her expert witnesses, which included Dr. H. Joseph Byrd as an expert in pharmacy, pharmacology, and toxicology. On October 17, 2006, the defendants first designated their expert witnesses, but later, on July 31, 2007, designated Dr. William J. George, who was “expected to testify that all that can be determined is that while the contents [of the IV bag] were capable of producing precipitate which could, under certain circumstances, potentially produce pulmonary vascular obstruction or other acute respiratory problems, this does not prove specific causation.”
¶ 6. Based on an agreed motion for continuance, the court amended its scheduling order, extending the expert designation and disclosure dates. Allcock was given until October 1, 2007, for Dr. Christopher Long; the defendants were given until November 1, 2007, for Dr. George. The court reopened discovery through December 3, 2007, “for the limited purpose of supplementing expert witness disclosures and deposing the new experts.”
¶ 7. The defendants supplemented Dr. George’s disclosure on November 1, 2007, to note that “Dr. George is of the opinion[,] to a reasonable probability, that there is substantially more potassium in the IV fluid than would have been called for by the order in the chart ...., and that the amount of potassium may have been as high as ten-fold higher than the bag labeling.” The court entered the pretrial order on December 19, 2007.
¶ 8. On February 7, 2008, the defendants moved to strike Dr. Byrd because he was not listed as a will-call or may-call witness in the pretrial order (the pretrial order does, however, set a date for Dr. Byrd’s deposition for no later than March 1, 2008). But because Allcock represented to the court that she would not call Dr. Byrd as a witness, the court denied the defendants’ motion as moot.
¶ 9. On May 23, 2008, Allcock moved to amend the pretrial order to add Dr. Byrd as an expert witness. Allcock argued that the defendants — in their motion in li-mine — for the first time “put forth the proposition that the amount of calcium chloride in the IV bag was 10 times the amount called for in the order written by the floor nurse,” and stated that this was the first time the defendants had raised the issue of the dosing relationship between calcium chloride and potassium phosphate. Allcock also argued that the Defendants had “consistently maintained that Dr. Bannister did not order a[n] IV mixture that contained any amount of calcium chloride.” The trial court, however, denied Allcock’s motion to amend, saying “it comes too late.”
¶ 10. The first trial began on August 4, 2008. The defendants objected to jury instruction P-13A, arguing that the instruction forced the jury to find that Dr. Bannister had a “non-delegable duty.” Allcock objected to the defendants’ instruction D-6A. The court overruled both objections.
¶ 11. The jury found Dr. Bannister thirty percent at fault and Memorial seventy percent at fault, and awarded $4,805,800 in damages — $805,800 in economic and $4,000,000 in noneconomic. The trial court entered judgment against Dr. Bannister for $391,740.
*794 ¶ 12. Allcock then moved the trial court to declare unconstitutional Mississippi Code Section 11-1-60’s cap on noneconomic damages. She also moved the court to amend the judgment for an additur, or in the alternative, a new trial. She argued that the court had failed to amend the pretrial order to allow Dr. Byrd to testify.
¶ 13. The defendants also moved for a new trial, arguing that jury instruction P-18A was an incorrect statement of the law and in direct conflict with D-12A and D-6A. The trial court granted the defendants’ motion for a new trial, concluding that jury instruction P-13A incorrectly forced the jury to conclude that “(1) the hospital was negligent as a result of the acts of the nurses and pharmacy, and (2) since Dr. Bannister has a non-delegable duty to assure that the physical exam, diagnoses, treatment and medication ordered were correct, then Dr. Bannister is strictly liable for the breach of care by the hospital nurses and pharmacy regardless of whether she was at the hospital or was aware of the mistake.”
¶ 14. Before the second trial, Allcock again moved to amend the pretrial order to add Dr. Byrd as an expert witness. The trial court denied the motion, and a jury found in favor of the defendants.
¶15. Allcock appealed, raising several issues, which we have restated as follows:
1. Did the trial court err by denying her motion to amend the pretrial order for the first trial?
2. Did the trial court err when it granted the defendants’ motion for a new trial for faulty jury instructions?
3. Did the trial court err in its calculation of the judgment amount for the first trial?
4. Did the trial court err by refusing to rule on the constitutionality of Section 11-1-60?
5. Did the trial court err by denying Allcock’s motion to amend the pretrial order in the second trial?
ANALYSIS
¶ 16. We affirm the trial court’s ruling on the pretrial order and its decision to grant a new trial. Thus, we decline to address whether the trial court erred in calculating the judgment for the first trial and whether Section 11-1-60 is unconstitutional.
I. The trial court did not abuse its discretion by denying Allcock’s first motion to amend the pretrial order.
¶ 17. We review a trial court’s decision regarding discovery violations under an abuse-of-discretion standard.[1] Therefore, we grant a trial court considerable discretion in managing pretrial discovery.[2]
¶ 18. Mississippi Rule of Civil Procedure 16 governs pretrial orders: “The court may enter an order reciting the action taken at the conference ... and such order shall control the subsequent course of the action, unless modified at the trial to prevent manifest injustice.”[3]
¶ 19. In her motion to amend the pretrial order, Allcock argued that the defendants — in their motion to strike — “for the first time in this case put forth the proposition that the amount of calcium chloride *795 in the IV bag was 10 times the amount called for in the order written by the floor nurse.” Allcock further argued that the Defendants had “consistently maintained that Dr. Bannister did not order a[n] IV mixture that contained any amount of calcium chloride.” The trial court denied her motion.
¶20. On appeal, Allcock argues that she did not have the benefit of having Dr. Byrd testify to rebut Dr. George’s testimony — that, had the pharmacist filled the order as written, no precipitant would have formed in the IV bag. She argues that Dr. Byrd’s affidavit provided that Dr. Bannister’s order — as written — could have formed the precipitant of calcium phosphate.
¶ 21. We find no abuse of discretion in the trial court’s decision. Allcock did not move to add Dr. Byrd as an expert until almost six months after the discovery deadline had passed — less than three months before the scheduled trial date. And the only reason Allcock gave for her untimely disclosure was that she did not learn that Dr. George would testify about the dosing relationship between calcium chloride and potassium phosphate until April 2008. Her excuse, however, is inadequate.
¶ 22. The defendants disclosed the substance of Dr. George’s testimony — the mixture in the IV bag, the hospital pharmacy’s compounding errors regarding the excessive use of potassium phosphate — in November 2007, before Allcock’s disclosure deadline. In fact, Allcock’s main contention at trial was that Dr. Bannister had prescribed improper treatment, so the dosing issue was always in question. And, contrary to Allcock’s assertion to the trial court, the defendants maintained at trial that Dr. Bannister did not order any amount of calcium chloride. Thus, the defendants’ November disclosure placed All-cock on sufficient notice that their expert would testify to the IV bag’s contents.
¶ 28. The dissent, however, relies on Mississippi Power & Light Co. v. Lump-kin [4] and Thompson v. Patino[5] to find the trial court in error for denying Allcock’s motion to amend. But each of those cases involved discovery sanctions.[6] Here, there was no discovery violation or sanction, but rather, a trial judge’s denial of a motion to amend a pretrial order. While other judges might have decided Allcock’s motion differently, we grant a trial court considerable discretion in managing cases, and we cannot say that the trial court erred by denying Allcock’s motion to amend the pretrial order. We therefore affirm the trial court’s decision on this issue.
II. The trial court did not err by granting the defendants a new trial for faulty jury instructions.
¶24. We review a trial court’s decision to grant a new trial under an abuse-of-discretion standard.[7] And we will view the evidence in the light most favorable to the nonmoving party and reverse only if “the verdict, if allowed to stand, would work a miscarriage of justice.”[8] A jury instruction likely to confuse or mis *796 lead the jury on the applicable law requires reversal.[9]
¶25. Mississippi Rule of Civil Procedure 59 authorizes a trial judge to set aside a jury verdict and grant a new trial whenever justice requires.[10] Here, the trial court granted the defendants’ motion for a new trial, finding that Jury Instruction P-13A — a vicarious-liability instruction— improperly instructed the jury on the law. P-18A read as follows:
The Court instructs the jury that Robert Allcock, II, was the patient of Dr. Bannister and that Dr. Bannister, as the admitting and treating physician of Robert Allcock, II, had a non-delegable duty to Robert Allcock, II. That means that if a doctor chooses to allow a nurse to perform a non-delegable duty, the doctor must accept responsibility if that duty is breached. Dr. Bannister had a non-delegable duty to Robert Allcock, II, to assure that the physical examination, diagnoses, treatment and medication ordered were correct and properly administered.
¶ 26. Allcock argues that the instruction did not, in fact, require the jury to impose a nondelegable duty on the nursing staff, but instead simply to find for the plaintiff if Dr. Bannister failed to act as a reasonably prudent, minimally competent physician under the circumstances. We reject this argument. The jury instruction undoubtedly required the jury to find Dr. Bannister at fault if the nursing staff improperly had administered the IV bag.
¶ 27. Under Mississippi law, a physician has a nondelegable duty
to render professional services consistent with that objectively ascertained minimally acceptable level of competence he may be expected to apply given the qualifications and level of expertise he holds himself out as possessing and given the circumstances of a particular case. The professional services contemplated within this duty concern the entire caring process, including but not limited to examination, history, testing, diagnosis, course of treatment, medication, surgery, follow-up, after-care and the like.[11]
¶28. But a nondelegable duty is not synonymous with vicarious liability. Mississippi law “imposes liability on a physician for the negligence of a nurse only if the nurse committed the negligent acts or omissions pursuant to the direction or control of the physician.”[12] Jury Instruction P-13A goes further than that, imposing liability on Dr. Bannister for the nurse’s actions that were not committed under the “direction or control of the physician.” Therefore, the instruction incorrectly states the law and imposes vicarious liability on Dr. Bannister for the nurse’s actions.
¶ 29. Allcock also argues that, because the jury found Dr. Bannister and the Children’s Clinic only thirty percent at fault, the jury could not have considered this jury instruction because, if it had, it would have found Dr. Bannister one hundred percent at fault. But this also is incorrect. P-13A allowed the jury to find the doctor at fault for administering the IV bag, thus *797 confusing the jury in its decision. It does not follow that the jury would have found Dr. Bannister 100 percent at fault had it found that the nurse improperly administered the IV, as the jury had other issues of fault to consider as well.
¶ 30. We therefore affirm the trial court’s grant of a new trial. And because we find that the trial court did not abuse its discretion by granting a new trial, we decline to address the moot issues of whether the trial court miscalculated the first trial’s judgment or whether Section 11-1-60 is unconstitutional.
III. The trial court did not abuse its discretion by denying Allcock’s motion to amend the pretrial order in the second trial.
¶ 31. Again, we grant considerable discretion in considering a trial court’s decision to deny a party’s motion to amend a pretrial order.[13] Allcock argues that the trial court erred by not granting her motion to amend the pretrial order before the second trial. In support of her argument, she advances several points: (1) she filed her second motion to amend the pretrial order in August 2008, soon after the first trial’s completion; (2) she had no way to attack Dr. George’s credibility; (3) the defendants would not have been prejudiced by the amendment; and (4) the trial court continued the second trial to sixteen months after it had denied her motion to amend.
¶ 32. As noted in one treatise, “[t]he purpose of a motion for a new trial ... is to give the trial court an opportunity to correct its own errors, or errors that have occurred in the conduct of the trial or proceedings, without the delay, expense, inconvenience, or other hardships of an appeal-”[14] Thus the purpose of the second trial in this case was to correct the faulty jury instructions — not to allow for additional discovery. Allcock argues, in substance, that — because the trial judge granted a new trial — he should have overlooked her failure to designate an expert in the first trial. The trial court was within its discretion to deny Allcock’s second motion to amend.
CONCLUSION
¶ 33. The trial court did not abuse its discretion by granting the defendants’ motion for a new trial. Likewise, the trial court did not abuse its discretion by denying either of Allcock’s motions to amend the pretrial order. We therefore affirm.
¶ 34. AFFIRMED.
WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, P.J., KITCHENS AND CHANDLER, JJ.

. Rhoda v. Weathers, 87 So.3d 1036, 1038 (Miss.2012) (citing Jones v. Jones, 995 So.2d 706, 711 (Miss.2008)).

. Bowie v. Montfort Jones Mem’l Hosp., 861 So.2d 1037, 1042 (Miss.2003).

. Miss. R. Civ. P. 16.

. Miss. Power & Light Co. v. Lumpkin, 725 So.2d 721 (Miss. 1998).

. Thompson v. Patino, 784 So.2d 220 (Miss.2001).

. See id. at 225-26; Lumpkin, 725 So.2d at 733-34.

. Rutland v. State, 60 So.3d 137, 142 (Miss.2011) (citing Irby v. State, 49 So.3d 94, 103 (Miss.2010)).

. United Servs. Auto. Ass'n v. Lisanby, 47 So.3d 1172, 1176 (Miss.2010).

. Young v. Guild, 7 So.3d 251, 259-60 (Miss.2009).

. Miss. R. Civ. P. 59 cmt.

. Hall v. Hilbun, 466 So.2d 856, 871 (Miss.1985), superceded by statute on other grounds, Miss.Code Ann. § 85-5-7, as recognized in Narkeeta Timber Co., Inc. v. Jenkins, 777 So.2d 39 (Miss.2000).

. Dearman v. Christian, 967 So.2d 636, 640 (Miss.2007) (emphasis added) (citing Hunnicutt v. Wright, 986 F.2d 119, 124 (5th Cir.1993)).

. Bowie, 861 So.2d at 1042.

. 66 C J.S. New Trial § 5 (2009).