KING, Justice,
dissenting:
¶ 35. Because I believe that the majority’s rigid application of the Rules of Civil Procedure in refusing to allow Allcock’s expert to testify creates a manifest injustice under the facts of this case, I respectfully dissent.[15]
*798 ¶ 36. A crucial issue in the case was whether Dr. Bannister ordered calcium chloride for Robert’s IV fluids, or whether another party, without authorization, added the calcium chloride to his IV fluids, and whether the calcium chloride in Robert’s IV caused his death.
¶ 37. On August 19, 2005, Allcock designated her expert witnesses, including Dr. H. Joseph Byrd as an expert in pharmacy, pharmacology, and toxicology. On October 17, 2006, the defendants designated their expert witnesses, not including Dr. William J. George. The defendants supplemented their expert designation on July 31, 2007, adding Dr. George as a pharmacologist and toxicologist who was “expected to testify that all that can be determined is that while the contents [of the IV] were capable of producing a precipitate which could, under certain circumstances, potentially produce pulmonary vascular obstruction or other acute respiratory problems, this does not prove specific causation.” This supplemental designation was submitted after the discovery deadlines outlined in the court’s Third Amended Scheduling Order, and was the subject of the Estate’s motion to strike on August 3, 2007. The court granted this motion on August 30, 2007.
¶ 38. On October 5, 2007, the court changed course and amended its scheduling order based on an agreed motion for continuance. The court allowed Allcock until October 1, 2007, to designate with regard to Dr. Christopher Long, and allowed the defendants through November I, 2007, to designate with regard to Dr. George. The court reopened discovery through December 3, 2007, “for the limited purpose of supplementing expert witness disclosures and deposing the new experts.” Thus, despite the defendants’ utter failure to timely designate Dr. George as an expert, the court ultimately allowed the defendants to designate Dr. George due to a trial continuance. The defendants supplemented Dr. George’s disclosure on November 1, 2007, to note that “Dr. George is of the opinion, to a reasonable probability that there is substantially more potassium in the IV fluid than would have been called for by the order in the chart ..., and that the amount of potassium may have been as high as ten-fold higher than the bag labeling.” This was the first time the issue of the contents of the IV bag not comporting with the label and the attendant issue of dose relationship were injected into the case. The court entered the pretrial order on December 19, 2007, and provided that it was binding on all parties “unless this order be hereafter modified by the Court for good cause and to prevent manifest injustice.”
¶ 39. On February 7, 2008, the defendants moved to strike Dr. Byrd as an expert witness. Their basis was that Dr. Byrd was not identified as a will-call or may-call witnesses in the pretrial order. While Dr. Byrd is not listed in the pretrial order as a may- or will-call witness, the pretrial order did specifically state that “[djepositions of plaintiffs experts Alan L. Nager, M.D., Christopher Long, Ph.D., and H. Joseph Byrd, Pharm.D., will be completed no later than March 1, 2008,” a date after the date the defendants filed their motion to strike. On April 2, 2008, the court denied the motion to strike Dr. Byrd as moot, based on Allcock’s representation that Dr. Byrd would not be called as a witness.
¶ 40. On May 13, 2008, Allcock moved to amend the pretrial order to add Dr. Byrd as an expert witness. Allcock represented that, had she known that the defendants would rely on this theory of dose relationship, she would have included Dr. Byrd in the original pretrial order. The defendants contend that Allcock was on *799 notice of the dose relationship issue by the pretrial order’s contention that the pharmacy improperly filled the IV order,[16] as well as by Dr. George’s expert designation. On May 23, 2008, the court denied the motion to amend the pretrial order regarding Dr. Byrd, stating that “it comes too late.”
¶ 41. The first trial in this case began on August 4, 2008, and ended in a jury verdict for Allcock. On October 10, 2008, the court granted Dr. Bannister’s motion for a new trial based on jury instruction conflicts.
¶ 42. On May 1, 2009, Allcock moved to amend the pretrial order to add Dr. Byrd as an expert in pharmacy, pharmacology, and toxicology. The defendants opposed the motion, claiming that the retrial “should be about correcting the error from the first trial and nothing more.” On June 24, 2009, the court denied Allcock’s motion to amend the pretrial order, and stated that the original pretrial order entered December 19, 2007, remained in effect. The court did not give any specific reason for denying Allcock’s motion, but merely stated that “the motion is not well taken” based on the motion, response, and oral arguments.
¶ 43. Mississippi Rule of Civil Procedure 16 governs pretrial orders. The rule provides that a pretrial order “shall control the subsequent course of the action, unless modified at the trial to prevent manifest injustice.” Miss. R. Civ. P. 16 (emphasis added). This Court has held that, under Rule 16, the court cannot modify a pretrial statement unless the modification is agreed upon by the parties or unless manifest injustice would occur. Singley v. Singley, 846 So.2d 1004, 1013 (Miss.2002). The Rules of Civil Procedure “shall be construed to secure the just, speedy, and inexpensive determination of every action.” Miss. R. Civ. P. 1 (emphasis added). “The primary purpose of procedural rules should be to promote justice[.]” Id. cmt. (2011).
¶ 44. A new trial may be granted due to mistakes made in conducting the trial, and a new trial provides a clean slate, during which the issues are retried and the parties may present evidence differently.[17] White v. Stewman, 932 So.2d 27, 33 (Miss.2006).
¶ 45. Exclusion of evidence for a discovery transgression is an extreme sanction. Miss. Power & Light Co. v. Lumpkin, 725 So.2d 721, 733-34 (Miss.1998) (finding abuse of discretion where trial court did not allow an expert to testify as to foreseeability); see also Thompson v. Patino, 784 So.2d 220, 223-24 (Miss.2001) (finding abuse of discretion where trial court struck an expert supplementation and affidavit and granted summary judgment). “Before imposing such a sanction a trial court should consider the explanation for the transgression, the importance of the testimony, the need for time to prepare to meet the testimony and the possibility of a continuance.” Lumpkin, 725 So.2d at 733-34.
The first consideration involves a determination whether the failure was deliberate, seriously negligent or an excusable oversight. The second consideration involves an assessment of harm to the *800 proponent of the testimony. The third and fourth considerations involve an assessment of the prejudice to the opponent of the evidence, the possibility of alternatives to cure that harm and the effect on the orderly proceedings of the court.
Id. at 734. Furthermore, even if counsel does not pursue the case perfectly, such that some form of sanctions may be warranted, a more extreme sanction such as exclusion of evidence or dismissal may be too drastic.[18] Thompson, 784 So.2d at 225-26.
¶ 46. In the case at hand, the original failure to include Dr. Byrd in the pretrial order for the first trial does appear to be negligent on the part of Allcock, although no evidence exists that it was deliberate, nor does Dr. Bannister contend it was. Allcock also does not have a valid excuse for failing to move to amend the pretrial order in a more timely manner. This factor favors the defendants’ contention that Dr. Byrd’s exclusion was proper.
¶ 47. The second consideration, involving the importance of the testimony and the harm to Allcock if it is excluded, weighs in favor of Allcock. A thorough review of the record indicates that this is a close case with regard to liability, something that is also indicated by the differing verdicts. The second trial hinged primarily on whether the alleged precipitation of calcium phosphate killed Robert — the calcium/phosphate combination in the IV was the central issue. Dr. Bannister, in addition to claiming that she never ordered calcium in the IV, relied heavily on the dose relationship theory — that only the dose as sent by the pharmacy, not the dose as written in the order, could have killed Robert. The defendants’ expert, Dr. George, testified in favor of their theory on the dose relationship. Allcock, while allegedly having experts willing to testify as to her theory on the dose relationship, was barred from introducing potentially pivotal testimony that the dose as written in the order could have killed Robert. It is obvious that the expert testimony that Allcock is attempting to introduce could be vital to her case. Thus, this factor favors Allcock.
¶ 48. In terms of the time needed to prepare to meet the testimony, Allcock moved to amend the pretrial order approximately five months before trial was scheduled.[19] Moreover, the trial was continued until October 2010, giving the parties one year and five months from the time of the motion to prepare. At oral argument in this case, the defendants’ counsel conceded that timing was not an impediment in allowing Dr. Byrd to testify in the second trial.
*801 ¶49. It is also difficult for the defendants to claim surprise regarding Dr. Byrd. Dr. Byrd was designated as a witness in August 2005, and he remained so designated for more than two years. The issue of dosage was not injected into the trial until November 2007, and then, only by a discovery of the defendants’ expert. Additionally, while Dr. Byrd was not listed in the pretrial order as a may- or will-call witness, he was mentioned in the pretrial order in regard to his deposition. The defendants even requested clarification as to Allcock’s intent to call Dr. Byrd in January 2008, indicating that there was certainly no surprise as to the potential of Dr. Byrd being a witness. After the new trial was granted, the defendants were aware that Dr. Byrd’s testimony was an issue of import to Allcock, especially given that Allcock’s post-trial motions included allegations of error in not allowing Dr. Byrd to testify. The defendants had ample time between the second motion to amend the pretrial order and the second trial of this case to take Dr. Byrd’s deposition and have their expert, Dr. George, review it. Thus, the third factor favors Allcock.
¶ 50. The fourth factor, the availability of a continuance, also favors Allcock, given that the trial was indeed continued until October 2010. Furthermore, the trial court did not give any specific reason whatsoever for denying the second motion to amend the pretrial order or Allcock’s motion for new trial. It merely stated summarily that the motions were not well-taken. This Court cannot ascertain whether the trial court believed this was a timeliness issue, an issue of prejudice, or what other reason the trial court may have had for denying the motions.
¶ 51. The entire purpose of the Rules of Civil Procedure and their deadlines is to promote justice. Under the facts of this case, “the net result of adhering to the letter of the rules of procedure, by way of rigid application, would be to thwart, rather than promote justice.” Hartford Underwriters Ins. Co. v. Williams, 936 So.2d 888, 894-95 (Miss.2006). This is not a case of inexcusable delay coupled with surprise and manifest prejudice, in which a more rigid application of the rules may be appropriate. While it is true that Allcock did not pursue her case perfectly and could have been more timely in 2007, given the importance of the testimony, the lack of prejudice to the defendants in allowing the testimony, and the lack of disruption to the orderly proceedings of the court, combined with the utter failure of the trial court to specify any reason for denying Allcock’s motions,[20] the trial court abused its discretion in denying Allcock’s motion to amend the pretrial order, and by extension, her motion for new trial. Exclusion of evidence is a harsh penalty, and some lesser form of sanction for Allcock’s actions would be more appropriate, especially when considered in light of the Rules’ mandate that they be construed to promote justice. Furthermore, a miscarriage of justice occurred by Dr. Byrd’s exclusion, as Allcock could not controvert Dr. George’s testimony. It is difficult to imagine how a jury could find for Allcock, where the only testimony on the main issue at trial was that Dr. Bannister could not have possibly been the cause of Rob *802 ert’s death, even had she ordered calcium chloride in the IV.
¶ 52. For these reasons, I dissent from the majority and would reverse the trial court’s decision to deny Allcock’s second motion to amend the pretrial order, and by extension, its decision to deny Allcock’s motion for a new trial, and I would remand the case for a new trial in which Dr. Byrd would be allowed to testify.
CARLSON, P.J., KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.

. Like the majority, I agree that the trial court did not err in granting the defendants’ motion for new trial based on faulty jury instructions, and likewise agree that this moots Allcock’s appealed issues regarding the judgment in the first trial. I write to express my disagreement solely on the issue of the trial court's denial of Allcock’s motion to amend the pretrial order to add Dr. Joseph Byrd as an expert.

. The pretrial order stated that "[d]efendants contend that the former defendant Memorial Hospital at Gulfport was negligent in failing to follow Dr. Bannister’s orders regarding the IV medications, in failing to recognize and stop the error of it [sic] own employees, including its nurses and pharmacy personnel, and in improperly filling the IV medication order."

. The trial court in this case did indeed allow the parties to present evidence differently during the second trial.

. Whether the trial court erred in denying Allcock’s first motion to amend the pretrial order in 2007 is immaterial. Even if the trial court did err in denying Allcock’s motion to amend the pretrial order, any such error was harmless. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.’’ Miss. R. Civ. P. 61. The remedy that Allcock requested for any error in denying the motion to amend the pretrial order was a new trial. The court indeed conducted a new trial in this case. Allcock received the requested remedy for this error. Thus, any alleged error in refusing to allow Dr. Byrd to testify would occur in the conduct of the second trial, not the first, as the remedy requested for the alleged error in the first trial was received. Therefore, I address only the issue of whether the court erred in denying Allcock's second motion to amend the pretrial order, presented in 2009.

. When Allcock moved to amend the pretrial order in May 2009, trial was scheduled for October 2009, according to the briefs. The trial did not actually occur until October 2010.

. In fact, the trial court allowed the defendants to designate Dr. George as an expert despite their untimely designation in violation of the Third Amended Scheduling Order, and after striking Dr. George as an expert, because the parties ultimately agreed to a continuance and a new scheduling order. Because the second trial was continued until a date more than a year after Allcock's second motion to amend the pretrial order, the trial court had no reason to deny Allcock the same consideration it had given the defendants.